J. M. SYKES ET AL. v. LIFE INSURANCE COMPANY OF VIRGINIA.

(Filed 25 May, 1908.)

1. **Insurance—False Representations—Reformation of Contract.**
    Courts of equity will reform a written contract of life insurance in accordance with the representations made by the agents of the insurance company, which are false and fraudulent, relied on by the insured, and reasonably induced him, an illiterate man, to accept it as the one he thereby supposed it to be.

2. **Same—Measure of Damages.**
    When it is established by the verdict of the jury, upon competent evidence and under proper instructions from the court, that the insured was induced to accept a contract of insurance different from what he supposed it to be by false representations of the agents of the insurance company, to the effect that he or the beneficiaries under the policy might withdraw the full amount of premiums paid, with interest, the measure of damages is the full amount of premiums paid, with interest thereon in accordance with that established by the contract as reformed; and it was error in the court below in this instance to allow the legal rate of six per cent. instead of four per cent., as stated in the policy.

ACTION tried before *Ferguson, J.,* and a jury, at October Term, 1907, of MECKLENBURG.

This action was brought to recover the amount of the premiums paid by the male plaintiff to the defendant on certain insurance policies described in the pleadings. The plaintiffs alleged that on or about 16 March, 1896, the defendant, through its officers and agents, came to plaintiff and importuned plaintiff to take out certain policies of insurance. This proposition was refused by plaintiff, who assured said officers and agents that he knew little of the nature of such contracts of insurance, and that said plaintiff did not have the means to lay out in such contracts, and upon this refusal the defendant, through its officers and agents as aforesaid, assured the plaintiff that they could and would issue to plaintiff insurance policies upon the life of himself and family, the premiums to be paid at the rate of so much per week, payable weekly, upon and with the condition, therein stipulated and set out, that upon the expiration of ten years the plaintiff or other person or persons entitled as beneficiaries under said policies could and might withdraw the full face of the policies and discontinue the policies or contracts of insurance without payment of any further sum, or that plaintiff or the beneficiaries might elect to draw from said defendant the aggregate of all premiums paid in, together with interest thereon, if they preferred, and cancel the policies. And the said defendant, through said officers and agents, assured plaintiff over and over again that these contracts embodied and would give to plaintiff all the advantages of a savings bank, with the additional advantage of the protection of insurance in the event of death, and that said contracts or policies would fully, by their terms, give plaintiff the said benefits. And plaintiff, relying upon said assurances as true, agreed to take out upon said conditions policies or contracts of insurance as follows: one policy on the life of plaintiff, face value $112, No. 528177; one policy on the life of plaintiff's wife, Maggie R. Sykes, face value $72, No. 528178; one policy on the life of Carl Sykes (plaintiff's son), No. 528179; one policy on the

life of Maggie R. Sykes, No. 642947. And plaintiff agreed
to pay therefor, and has paid regularly therefor since said
date, a weekly premium of 25 cents, amounting in all to
$150. That plaintiff accepted the policies above named upon
the assurance of defendant that they in terms guaranteed the
benefits and protection as hereinbefore set out, and said plain-
tiff has faithfully met every assessment called for under the
provisions of the above-named contracts of insurance, and has
paid the defendant in doing so the aggregate principal sum
of about $150. All these amounts plaintiff has paid and was
induced to pay by assurances of defendant, upon which plain-
tiff implicitly relied, that plaintiff or other beneficiaries under
said contract, at the end of ten years, might withdraw in cash
the full face of the policies or the full amount of premiums
paid in, with interest thereon. That plaintiff is of humble
station in life, of limited knowledge of affairs, and almost
entirely ignorant of insurance contracts; plaintiff never for
himself read said contracts, and would not know, perhaps, if
he had read the same, what benefits are guaranteed and pro-
vided under their terms; but said plaintiff relied upon the
assurances of defendant's officers and agents, who made a pre-
tense of reading and explaining said contract to plaintiff, and
in doing so the defendant, through its officers and agents,
unlawfully and wickedly misread and falsely stated what was
in the contracts, with a design to inveigle this plaintiff into
accepting these contracts, fraudulently misrepresenting the
terms of the same, as hereinbefore set out; and that, moved
by these statements, plaintiff believed in the honesty and
integrity of the assurances, accepted the contracts in good
faith and kept up said insurance for a long time, at great
sacrifice, and paid therefor a large part of his weekly earn-
ings to the defendant upon these contracts. Plaintiff has
recently been informed, and so alleges, that the policies are
not such as he contracted for; that they provide for no benefit,
unless for a mere pittance, to the beneficiaries at the end of

ten years, and since the discovery of the same the plaintiff has demanded the return of his premiums so paid, and the same has been refused.

Plaintiff alleges that the statements made by the defendant, through its officers and agents, as above set out, were false, fraudulent and wickedly designed to deceive and calculated to deceive plaintiff, and that they did in fact deceive plaintiff; and that the said defendant has knowingly reaped the reward of this wrongful conduct, and that, instead of issuing contracts pursuant to and consistent with the agreements, it issued others, providing for no substantial benefits to the beneficiaries thereunder, except in the event of death, and that this wrongful conduct has caused the plaintiff damage in the sum of $200. Wherefore, plaintiff demands judgment for the sum of $200, for the costs of this action and for such other and further relief as to the court may seem just and right.

The defendant answered and denied the material allegations of the complaint.

The court submitted issues to the jury, which, with the answers thereto, are as follows:

1. "Did the defendant, through its agents, represent to plaintiff that it could and would issue to said plaintiff insurance policies on the lives of Joseph M. Sykes, Maggie R. Sykes and Carl Sykes, with the provision therein stipulated that at the end of ten years from the date thereof the plaintiff might withdraw the whole amount of premiums paid in, with four per cent. interest thereon?" Answer: "Yes."

2. "If so, were such representations false?" Answer: "Yes."

3. "If so, were such representations relied upon by the plaintiff?" Answer: "Yes."

4. "If so, was the plaintiff induced thereby to enter into said contracts of insurance?" Answer: "Yes."

5. "Has the plaintiff waived his right to rely upon said representations?" Answer: "No."

6. "What amount is the plaintiff entitled to recover of the defendant?" Answer: "One hundred and forty-four dollars and fourteen cents."

Upon the verdict the court adjudged that the plaintiff recover of the defendant the said sum of $144.14 and costs. The defendant excepted and appealed.

No counsel for plaintiffs.
*W. B. Rodman* and *Morrison & Whitlock* for defendant.

WALKER, J. The defendant entered several exceptions to the rulings and charge of the court, which we understood to be abandoned here, and, we think, properly so. The question which we are called upon to decide, and which was the only one presented in the argument before us, relates to the measure of damages. The court charged upon the sixth issue that, if the jury found the other issues in favor of the plaintiff, he was entitled to recover as damages "the amount of the premiums paid, with six per cent. interest from the date of each payment until paid." This instruction was erroneous—not sufficiently so, however, to reverse the judgment, but only to modify and affirm it, for the reasons which will hereinafter appear.

The defendant's counsel have argued that there was substantial error in the charge of the court upon the sixth issue, as the wrong rule for measuring the damages was given to the jury. They insist that the defendant was entitled to a deduction or credit to the extent of the value of the benefit received by the plaintiff in the way of insurance during the period fixed by the contract, this being an action sounding in tort and brought for the purpose of rescinding the contract because of the fraud or deceit practiced upon the plaintiff. We will state the proposition in the language of the defendant's counsel, to be found in their brief, so that there may be no misunderstanding as to the exact position taken by them:

"The proper rule as to the measure of damages is that laid down in *May v. Loomis,* 140 N. C., 350, namely, the defendant should be required to pay back what has been paid in, with interest, less the actual value of the property received, unless the property can be restored." That is the ordinary rule, perhaps, as stated in the case cited by counsel, and they attempt to draw an analogy between such a case and this one. In this case they say the plaintiff has received the ten years' insurance for which he contracted. This, of course, cannot be returned. Therefore, in order to have the parties placed *in statu quo,* or as near this as can be done, the plaintiff should be required to allow the defendant, as a credit upon the premiums which have been paid, the value of that (benefit) in insurance which he has received. It is also contended by the learned counsel that this case is essentially different from *Braswell v. Insurance Co.,* 75 N. C., 8, and other decisions of a like kind following it, by reason of the fact that in each of those cases the contract of insurance was an entire and indivisible one, and we presume it would be further argued, as a sequence from the premise, that the policy was wrongfully cancelled by the defendant before the term of insurance had expired, and the defendant, having thus refused to perform the entire contract, should restore what it had received without any abatement, because it was not entitled to have anything until all the contract was performed on its part. *Lawing v. Rintels,* 97 N. C., 350; *Tussey v. Owen,* 139 N. C., 457. But we do not think our decision should be rested on so narrow a ground, nor do we think this case bears any analogy to *May v. Loomis, supra; Smith v. Bolles,* 136 U. S., 125, and the other cases cited by counsel in their well-prepared brief to sustain their contention. It is certainly not like *Braswell v. Insurance Co.* and cases of its type, as counsel admit, but not altogether for the reason stated by them. In our case the representation was that the plaintiff would receive the benefit of the insurance

and, in addition, the premiums paid in and four per cent. interest thereon at the end of the insurance term; and, if we consider the action as one sounding in tort, it may be that the plaintiff could recover the premiums and interest without making any allowance for the benefit received from the insurance, and upon a principle not inconsistent with the doctrine as stated in either class of cases relied on by the defendant. It would seem that when a plaintiff sues to recover damages for deceit he should be recompensed in damages to the extent of placing him in as good a position as he would have occupied if the contract had been as represented. In *Heddon v. Griffen,* 136 Mass., at p. 232, where it appeared that a fraudulent representation had been made as to a policy of insurance, the Court said: "We are of the opinion that under the circumstances he (the plaintiff) has a right to recover damages of the defendant to an amount which will put him in the same position as if the fraud had not been practiced on him." Our case is stronger than this one, for there the contract was still executory, but here the full insurance period had elapsed. The plaintiff had received the insurance which it was represented he would receive, and is now suing for the balance due, if the defendant is required to make good its deceitful representation. But we have not decided this case upon any such ground, as we consider it very clear that the plaintiff has sufficiently alleged in the complaint, and the jury have found in their verdict upon the issues submitted to them, that he was fraudulently induced to enter into a contract of insurance, as evidenced by the policy, which he did not intend to make. We, therefore, have presented a case of one party who, by a mistake induced by the fraud of another, has executed a contract different from what it was supposed to be when the agent misled the plaintiff as to its true contents and meaning. This presents a case for equitable relief by a reformation of the contract, and an enforcement of it as thus corrected. A part of it has been carried out—that is, the

plaintiff's life has been insured for the stipulated time—while the other part, the payment of the premiums and interest, the defendant refused to perform. The court in such a case will compel a specific performance of the contract after conforming its terms to what they should have been. It is not always essential to the reformation of a contract that there should be a mutual mistake of the parties in draughting it. The mistake of one party induced by the fraud of the other is quite sufficient to entitle the defrauded party to the aid of a court of equity. This is elementary, and it would be strange if the law were otherwise. *Wilson v. Land Co.,* 77 N. C., 445. "The remedy of reformation is obviously one which is necessary to the complete and exact administration of justice, and which, moreover, can be attained by equitable procedure alone. A court of law may construe and enforce an instrument as it stands, or may refuse, upon proper cause shown, to give any effect to it, or may treat it as a nullity. But it is plain that, if the instrument has not been drawn so as to express the true intention of the parties, to enforce it in its existing condition would be simply to carry out the very mistake or fraud complained of; while to set it aside altogether might deprive the plaintiff of the advantages of a contract to which he is lawfully entitled. It is obvious, therefore, that the only true measure of justice in such a case is the equitable remedy by reformation (or correction, as it is sometimes called), by means of which the instrument is made to conform to the intention of the parties, and is then enforced in its corrected shape. In like manner policies of insurance have been reformed where, through inadvertence, accident or mistake, the terms of the policy have not been properly set forth. And so, where, through artifice, the written evidence of a contract is drawn in such way that the terms of the agreement are not accurately expressed, the party injured by the fraud may come into equity for the purpose of having the instrument corrected and the contract, as reformed, enforced." Bisp-

ham's Equity (6th Ed.), sec. 486. That accurate and learned writer further says: "Where the mistake has been on one side only, the utmost that the party desiring relief can obtain is rescission, not reformation. The case is, of course, different if any element of fraud exists; for it has been properly held that where there is a mistake on one side and fraud on the other there is a case for reformation." *Ib.*, sec. 469. "It has been asserted that, while fraud is a ground for rescission, it is not a ground for reformation, but the better rule is that fraud may be a ground for reformation, especially where it is accompanied by mistake, as where there is a mistake of one of the parties, accompanied by fraud on the part of the other." 24 Am. and Eng. Enc., p. 652b. The principle, as we have seen, applies to policies of insurance. "The power of reformation extends to practically every kind of written instrument. Thus, there may be a reformation of a conveyance, a mortgage or deed of trust, a bond, an insurance policy, a promissory note, lease, power of attorney, contract of sale, or any character of contract in writing." 24 Am. and Eng. Enc. (2d Ed.), p. 652. In *Thompson v. Insurance Co.,* 136 U. S., 287, a policy was reformed and payment of it enforced after the loss had occurred. In *Snell v. Insurance Co.,* 98 U. S., 88, it is said: "We have before us a contract from which, by mistake, material stipulations have been omitted, whereby the true intent and meaning of the parties are not fully or accurately expressed. A definite, concluded agreement as to insurance, which in point of time preceded the preparation and delivery of the policy, is established by legal and exact evidence, which removes all doubt as to the understanding of the parties. In the attempt to reduce the contract to writing there has been a mutual mistake, caused chiefly by that party who now seeks to limit the insurance to an interest in the property less than that agreed to be insured. The written agreement did not effect that which the parties intended. That a court of equity can afford relief in such

a case is, we think, well settled by the authorities." In *Henkle v. Royal Exchange,* 1 Ves. Sen., 318, the bill sought to reform a written policy after the loss had actually happened, upon the ground that it did not express the intent of the contracting parties. Lord Hardwick said: "No doubt but that this Court has jurisdiction to relieve in respect of a plain mistake in contracts in writing as well as against frauds in contracts, so that, if reduced to writing contrary to the intent of the parties, on proper proof, it would be rectified." So, in *Gillespie v. Moon,* 2 Johns (N. Y.) Ch., 585, *Chancellor Kent* examined the question, both upon principle and authority, and thus stated the doctrine: "I have looked into most, if not all, of the cases in this branch of equity jurisdiction, and it appears to me established, and on great and essential grounds of justice, that relief can be had against a deed or a contract in writing founded in mistake or fraud. The mistake may be shown by parol proof and the relief granted to the injured party, whether he sets up the mistake affirmatively by bill or as a defense." In the same case he said: "It appears to be the steady language of the English Chancery Court for the last seventy years, and of all the compilers of the doctrines of that court, that a party may be admitted to show by parol proof a mistake as well as fraud in the execution of a deed or other writing." In *Hearne v. Insurance Co.,* 20 Wall., 490, *Justice Swayne* states the principle thus: "The reformation of written contracts for fraud or mistake is an ordinary head of equity jurisdiction. The rules which govern the exercise of this power are founded in good sense and are well settled. Where the agreement, as reduced to writing, omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected so as to make it conform to their real intent. The parties will be placed as they would have stood if the mistake had not occurred." This Court decided, in *Floars v. Insurance Co.,* 144 N. C., 232, that in proper cases

courts of equity have jurisdiction to reform a contract of insurance, in order to enable the holder of the policy to recover, in accordance with a previous contract differing from the written one, when the difference was caused by fraud or mistake, and the court will award damages in the same suit if necessary to give full relief. We know that a money judgment is not an unusual form of relief in a court of equity. *Sprinkle v. Wellborn,* 140 N. C., 163. There was sufficient evidence to carry this case to the jury, and the charge of the court fairly presented to them the issues involved. *Caldwell v. Insurance Co.,* 140 N. C., 100. We have discussed the question relating to the reformation of the policy, so as to show that the defendant is not entitled to any credit for the benefit received from the insurance, for the reason that the plaintiff was entitled to that under the original oral contract, if it had been properly reduced to writing and it had not been falsely stated in the policy, by reason of the defendant's fraudulent conduct. He is also entitled to the premiums, with four per cent., instead of six per cent., as allowed by the court. The plaintiff recovers according to the reformed contract, and therefore can only have four per cent. interest on the premiums. The judgment will be modified in this particular, and is in other respects affirmed.

There was some evidence that the plaintiff was very ignorant and unlettered, and this must have been known to the defendant's agent. He was an easy mark for the false and fraudulent practices of the defendant's agent, who was evidently a man of much superior intelligence. There was some evidence to the contrary, but what was the fact in this conflict of testimony was a question for the jury. The agent, it seems, took advantage of the plaintiff's ignorance and misled him as to the true nature of the contract. The policy was so worded as to leave some room for doubt and uncertainty as to what or how much the plaintiff would receive at the end of the insurance period, and what the agent said in explana-

tion of it was fairly calculated to mislead an ignorant man. The jury, by their verdict, have substantially found that there was a mistake in writing the policy, which was induced by the fraud of the defendant. This entitled the plaintiff to the judgment, with the rate of interest changed. We think, under the circumstances, the costs of this Court should be taxed against the defendant.

Modified and Affirmed.