This action was brought to recover damages for fraud and deceit practised upon the plaintiff, by which he was induced to accept certain policies of insurance from the defendant upon the lives of his children, the false representation being that the company had issued the policies with a provision that at the end of the insurance period, which was ten years, the plaintiff would be entitled to receive the total amount of premiums paid by him with four per cent interest. The *Page 61 
plaintiff alleged that this representation was made, that it was false and intended and calculated to deceive him, and that he relied upon it, believing it to be true, and was induced thereby to accept the insurance and pay the premiums thereon from time to time, as they matured; that he demanded payment of the money, according to the stipulation, and it was refused, and he prosecutes this action to recover it. Issues were submitted to the jury and they found the facts to be as alleged by the plaintiff, and assessed the damages at $101.37. The court entered judgment upon the verdict, and the defendant, upon its exceptions to the rulings of the court, brought the case here for review.
There was evidence sufficient to carry the case to the jury upon the issues formulated for their consideration. It appears therefrom that the plaintiff could not read or write and had to rely upon the reading and representation of the defendant's agent, who negotiated the insurance, for his understanding of its terms, and especially did he have to rely upon him to give correct information as to its contents with reference to the stipulation for a return of the premiums and interest, and he thought the policy contained this provision when he received it from him, relying upon his honesty and integrity in all his dealings with him. It turned out that the paper was falsely read and explained to him. This is, in law, a fraud. It was an advantage taken of plaintiff's illiteracy in order to induce the making of the contract. As the plaintiff (75) was unable to read and understand the terms of the policies, it will not be imputed to him as a negligent act that he requested the agent to read it to him and afterwards acted in reliance upon what he said. He was unable to read and understand the terms of the policies, it will not be imputed to him as a negligent act that he requested the agent to read it to him and afterwards acted in reliance upon what he said. He was not bound to deal with him as if he were a rascal and unworthy of his trust, and by confiding in him he has not waived any of his rights. The act of the agent is none the less a fraud because this old and ignorant man trusted in his honor and sense of fair dealing. McArthur v.Johnson, 61 N.C. 317; Hayes v. R. R., 143 N.C. 125.
We are unable to distinguish this case from those of a like kind which have been so recently decided by this Court. Caldwell v. Insurance Co.,140 N.C. 100; Sykes v. Insurance Co., 148 N.C. 13; Stroud v. Insurance Co.,148 N.C. 54; Whitehurst v. Insurance Co., 149 N.C. 273; Jones v.Insurance Co., 151 N.C. 54; Jones v. Insurance Co., 153 N.C. 388. As said in Caldwell v. Insurance Co., supra: "She could not read the policies, and it is no serious reflection upon her intelligence to surmise that, if she could have done so, she would not have been very much wiser." The plaintiff, as the evidence tends to show, was not only illiterate, but below the average in intelligence and incapable of coping with a man who had full knowledge of all the intricacies of life insurance, and was trained by habit and experience to catch the unwary. He had a decided advantage of the plaintiff, who was not by any means at arms' *Page 62 
length with him, and he forgot his duty in an over-zealous effort to advance the interests of his company, when he availed himself of his greater superiority and thus procured the contract. "He (the plaintiff) was an easy mark for the false and fraudulent practices of the defendant's agent, who was evidently a man of much superior intelligence. There was some evidence to the contrary, but what was the fact in this conflict of testimony was a question for the jury. The agent, it seems, took advantage of the plaintiff's ignorance and misled him as to the true nature of the contract. The policy was so worded as to leave some room for doubt and uncertainty as to what or how much the plaintiff would receive at the end of the insurance period, and what the agent (76) said in explanation of it was fairly calculated to mislead an ignorant man." Sykes v. Insurance Co., 148 N.C. 13. This case is much like Jones v. Insurance Co., 151 N.C. 54, except that the evidence now before us is much stronger to show fraud than was the evidence in that case. What is there said, though, is strictly applicable to the facts now under consideration.
But the defendant contends that what the agent said was not binding upon his principal, the defendant, as no authority in him is shown to make the fraudulent representations. We can well answer this contention by stating what was said in regard to a similar one in Peebles v. Guano Co.,77 N.C. 233: "There is no reason that occurs to us why a different rule should be applicable to cases of deceit from what applies to other torts. A corporation can only act through its agents, and must be responsible for their acts. It is of the greatest public importance that it should be so. If a manufacturing and trading corporation is not responsible for the false and fraudulent representations of its agents, those who deal with it will be practically without redress and the corporation can commit fraud with impunity." So in Mfg. Co. v. Davis, 147 N.C. 267, the present ChiefJustice says: "The plaintiff company is liable for the fraudulent representations of its salesman and agent which were made to defendant to induce the trade and acted upon by defendant to his injury. This would be so whether the agency of Guy were general or special. Hunter v. Matthias,90 N.C. 105; Peebles v. Patapsco Co., 77 N.C. 233; 1 A. E. Enc. (2 Ed.), 1143." Vance, in his treatise on Insurance, at page 341, speaking of clauses in policies relieving the companies of liability for any stipulation or representation made by an agent and not contained in the policy, and forbidding him to change the terms of the contract as written in the policy, says: "Closely related in principle to the attempted limitations just discussed, and usually contained in the same term of the policy or application, are those agreements whereby the insurer seeks to escape responsibility for fraud perpetrated by the agent in the course of the transaction looking *Page 63 
to the procurement of the policy. It is a fundamental principle that one shall not be allowed to exempt himself by contract from liability by reason of the fraud of his servants or agents. It would seem (77) therefore, necessarily to follow that any agreement contained in the policy, by which the insurer is relieved from the consequences of his agent's fraud in making the contract of insurance, is necessarily without effect." In our case, the plaintiff seeks to recover damages for the deceit practiced upon him by the agent or to have the contract rescinded because of the fraud and recover the premiums paid by him, and the verdict is sufficient to entitle him to this relief. In this connection, what is said in Caldwell v. Insurance Co., 140 N.C. at page 105, is applicable: "The court correctly announced the law which gives relief, the jury upon ample evidence have found the facts as testified by the plaintiff. It is admitted that the policies do not entitle her to receive the amount paid in or any other amount at the end of ten years; that on the contrary, she forfeits all that she has paid. Upon the verdict the law declares that as she can not have what was promised to her, she must have her money back with interest. If the defendant has been compelled to carry the risk during the life of the policies without compensation, it must look to its accredited agent, whom the jury finds made the false representation. This Court has uniformly held that in such cases the measure of relief is the amount paid with interest." What the rate of interest should be under the circumstances is not a question in the case. In Floars v. Insurance Co., 144 N.C. 232, the plaintiff sought to reform the policy and recover accordingly, and the question of the agent's authority to make the reformed contract became material in order to ascertain whether there had been any mistake on the part of the company through its agent, or whether it had delivered the very policy intended by it, for in order to a reformation or correction of the instrument, a material mistake of both the parties must have been shown, and not merely the mistake of one of them. So in Sykes v.Insurance Co., 148 N.C. 13, no point as to the agent's authority was involved. We were dealing merely with a verdict which found that "the defendant, through its agent," had made the false representation, and the question was whether the verdict was sufficient in its findings to entitle the plaintiff to a reformation of the policy, and to (78) recover the premiums paid with the stipulated interest. We held that he was, though we also intimated that he might have recovered damages for the deceit, when we said: "It would seem that when a plaintiff sues to recover damages for deceit he should be recompensed in damages to the extent of placing him in as good a position as he would have occupied if the contract had been as represented. In Heddonv. Griffen, 136 Mass. at page 232, where it appeared that a fraudulent *Page 64 
representation had been made as to a policy of insurance, the Court said: `We are of the opinion that under the circumstances he (the plaintiff) has a right to recover damages of the defendant to an amount which will put him in the same position as if the fraud had not been practiced on him.' Our case is stronger than this one, for there the contract was still executory, but here the full insurance period had elapsed. The plaintiff had received the insurance which it was represented he would receive, and is now suing for the balance due, if the defendant is required to make good its deceitful representation."
The question in Medicine Co. v. Mizell, 148 N.C. 385, which case is relied on by the defendant, is quite different from the one in this case. The evidence of the verbal declarations or statements of an agent, without authority to make them, was admitted to vary the terms of a written contract, and we held, in accordance with the well settled rule, that it was incompetent and should have been excluded. There was no question of fraud in that case. The defendant could read and signed the contract, well knowing what it contained, and thereby freely assented to the provision that there was "no agreement, verbal or otherwise, affecting the terms of the order (for the goods) other than specified therein." That is not like our case.
No error.
Cited: Hughes v. Ins. Co., 156 N.C. 593; Piano Co. v. Strickland,163 N.C. 253.
(79)