ACE, INCORPORATED v. WAYNE R. MAYNARD; UNIFIED TECHNOLOGIES OF TEXAS, INC.; KEN GEDNEY, D/B/A KEN GEDNEY AIRCRAFT SALES AND KEN GEDNEY, INDIVIDUALLY

No. 9121SC854

(Filed 15 December 1992)

1. **Uniform Commercial Code § 9 (NCI3d) — purchase agreement — disclaimer of warranties — evidence of express warranties inadmissible — parol evidence rule**

Where an airplane purchase agreement signed by plaintiff corporation's sole shareholder and the seller's broker stated that "there are NO WARRANTIES, EXPRESS OR IMPLIED AS TO ANY MATTER WHATSOEVER, INCLUDING . . . THE CONDITION OF THE AIRCRAFT, PARTS OR ACCESSORIES," and the evidence indicated that the writing was the final expression of the parties' agreement as to the terms contained therein, the broker's prior oral statements with regard to the quality and condition of the airplane were inadmissible under the parol evidence rule to show express warranties by the seller because they contradicted the terms of the parties' written agreement. N.C.G.S. §§ 25-2-202 and 25-2-316(1).

**Am Jur 2d, Sales §§ 325, 327, 340.**

**Comment Note — The parol evidence rule and admissibility of extrinsic evidence to establish and clarify ambiguity in written contract. 40 ALR3d 1384.**

2. **Uniform Commercial Code § 15 (NCI3d) — warranty of merchantability — exclusion by purchase agreement**

An implied warranty of merchantability of an airplane was properly excluded by a provision in the purchase agree-

ACE, INC. v. MAYNARD

[108 N.C. App. 241 (1992)]

ment stating that the sale of the airplane was "as is" and conspicuous language in the agreement specifically disclaiming a warranty of merchantability. N.C.G.S. §§ 25-2-314(1) and 25-2-316.

**Am Jur 2d, Sales § 835.**

**Construction and effect of affirmative provision in contract of sale by which purchaser agrees to take article "as is," in the condition in which it is, or equivalent term. 24 ALR3d 465.**

3. **Fraud, Deceit, and Misrepresentation § 14 (NCI4th)— fraud in sale of airplane—insufficient evidence**

Plaintiff's evidence was insufficient for submission to the jury on the issue of fraud by defendants in the sale of an airplane where the evidence established that plaintiff's sole shareholder read and signed a purchase agreement stating that "there are no REPRESENTATIONS . . . AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE CONDITION OF THE AIRCRAFT, PARTS OR ACCESSORIES," the shareholder admitted at trial that he understood the effect of this language in the agreement, and plaintiff presented no evidence that defendants knew of any defects in the airplane.

**Am Jur 2d, Fraud and Deceit § 388.**

Appeal by plaintiff from order filed 9 April 1991 in Forsyth County Superior Court by Judge William H. Freeman. Heard in the Court of Appeals 16 September 1992.

*Petree Stockton & Robinson, by Jerry M. Smith, for plaintiff-appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Mack Sperling, for defendant-appellees.*

GREENE, Judge.

Plaintiff appeals from a judgment notwithstanding the verdict, N.C.G.S. § 1A-1, Rule 50, filed 9 April 1991.

The evidence in the record before this Court establishes that in January, 1989, defendant Unified Technologies of Texas, Inc. (Unified) marketed for sale a used Beechcraft Baron airplane through

ACE, INC. v. MAYNARD

[108 N.C. App. 241 (1992)]

*Trade-A-Plane,* an aviation advertising journal. Plaintiff, through its sole shareholder, Winston-Salem attorney Thompson Comerford (Comerford), contacted defendant Ken Gedney (Gedney), the broker for the airplane, at Gedney's office in Dallas, Texas. During that and subsequent telephone conversations, Gedney stated that the airplane had been "excellently maintained," had been operated under Section 135 flight regulations (meaning the plane had been subject to airworthiness inspections every one-hundred flight hours), and that he was personally familiar with its performance and characteristics. Gedney also sent Comerford a specifications sheet outlining the airplane's avionics and its cosmetic and optional features, as well as a videotape of the plane.

Comerford and Gedney reached an agreement for the sale of the airplane to plaintiff. They agreed that the sale was subject to an inspection, which was conducted by independent mechanic Ferrell Trask in Dallas who advised Comerford that the aircraft was completely airworthy, and a test flight by Comerford. At the time Comerford agreed to the purchase, the plane was three months from its annual inspection and twenty-five flight hours from its next one-hundred-hour inspection. Comerford sent Gedney $3500.00 to hold the plane until Gedney could deliver it to him in North Carolina. Gedney later informed Comerford that his schedule did not permit him to deliver the plane, so they agreed that Comerford would travel to Dallas to pick it up. Prior to Comerford's traveling to Dallas, Gedney informed Comerford that the balance of the purchase price, $80,000.00, would need to be wired to Unified's account in Dallas in order to obtain the release of a lien on the plane. Comerford wired the money to a bank in Dallas prior to leaving North Carolina.

Upon arrival in Dallas on 21 July 1989, Comerford accompanied Gedney to a bank in order to ascertain that the money wired by Comerford had been received. This process took several hours. Comerford and Gedney then went to Gedney's aircraft hangar where the plane was located. Comerford observed the plane for the first time and was immediately "disappointed" in its cosmetic features. Comerford then checked the plane's log books, which Comerford testified "appeared to be in order." At this point, according to Comerford's testimony, he and Gedney agreed that, since it was getting late and Comerford did not have time to test fly the plane, Comerford's flight back to North Carolina would serve as the test flight. Prior to Comerford's departure, Gedney, on instructions from

Unified, presented to Comerford a one-page "Purchase Agreement." Gedney informed Comerford that his signature on the document would be required in order for Comerford to take the plane to North Carolina. Comerford read and "reluctantly" signed the document, which provides in pertinent part that

> [p]urchasers [Ace, Incorporated] have been informed and understand that this is a final sale, and that the aircraft, parts and accessories, are being sold "AS IS" and "WHERE IS," and that there are "NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED AS TO ANY MATTER WHATSOEVER, INCLUDING, WHITHOUT [SIC] LIMITATION, THE CONDITION OF THE AIRCRAFT, PARTS OR ACCESSORIES, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE."

After both parties signed the document, Comerford started the airplane and taxied it down the runway. Experiencing problems with the brakes and the plane's steering mechanism, Comerford returned to the hangar to discuss the problems with Gedney, who, according to Comerford, promised to correct the defects. Comerford then flew the airplane to North Carolina, during which time he discovered more problems, "the most significant of which was unsatisfactory climb and cruise performance." Comerford called Gedney immediately upon landing in North Carolina, and, according to Comerford, Gedney stated that any problems with the aircraft would be resolved but that he "couldn't talk now because he was having a party." Comerford unsuccessfully attempted to contact Gedney and defendant Wayne Maynard, president of Unified, throughout the weekend. Defendants later refused to repair the defects in the aircraft and rejected plaintiff's tender of the plane in exchange for the purchase price. Plaintiff repaired the airplane at its own expense and brought the instant action for damages, asserting claims for breach of warranty, fraud, and unfair and deceptive trade practices.

At trial, both Comerford and plaintiff's expert Thomas Hurlocker testified that the airplane's condition was not consistent with a "Part 135 operation," and that, in fact, had certain repairs not been made after plaintiff's purchase of the plane, the plane would be considered unairworthy. At the close of all the evidence, defendants made a motion for a directed verdict, which was denied. The jury returned a verdict in favor of plaintiff on plaintiff's claims for breach of express warranty, breach of the implied warranty

ACE, INC. v. MAYNARD

[108 N.C. App. 241 (1992)]

of merchantability, and fraud. Defendants subsequently made a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. From an order by the trial court granting defendants' motion, plaintiff appeals.

---

The issues presented are (I) whether the Purchase Agreement properly disclaimed any express warranties regarding the airplane; (II) whether the Purchase Agreement properly disclaimed the implied warranty of merchantability; and (III) whether plaintiff failed to present substantial evidence of the essential elements of fraud on the part of defendants, thus rendering the trial court's granting of defendants' motion for judgment notwithstanding the verdict proper.

When the trial court denies a defendant's motion for a directed verdict made at the close of all the evidence, the court may, upon motion by the defendant made within ten days after entry of judgment, reconsider the sufficiency of the evidence and enter judgment notwithstanding the verdict (JNOV). N.C.G.S. § 1A-1, Rule 50 (1990). "A [JNOV motion] is simply a motion that judgment be entered in accordance with the movant's earlier motion for a directed verdict and notwithstanding the contrary verdict actually returned by the jury." W. Brian Howell, *Howell's Shuford North Carolina Civil Practice and Procedure* § 50-6 (4th ed. 1992).

The central question for the reviewing court when a trial court grants a defendant's motion for judgment notwithstanding the verdict is whether, taking the evidence in the light most favorable to the plaintiff and resolving all inconsistencies in his favor, the plaintiff met his burden at trial of presenting substantial evidence of his claim. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).

I

Express Warranties

[1]  Plaintiff argues that it presented substantial evidence at trial of defendants' creation and breach of express warranties with regard to the quality and condition of the airplane, and that the trial court erred by granting defendants' JNOV motion on this issue. Specifically, plaintiff argues that the following statements by Gedney created express warranties: (1) the aircraft's icing boots were in

excellent condition; (2) the aircraft received excellent maintenance; (3) the aircraft received pampered treatment and was babied; and (4) the aircraft was maintained as a Part 135 air taxi operation. Defendants contend that the Purchase Agreement signed by Comerford disclaimed any express warranties, and that Gedney's prior oral statements to Comerford are legally ineffective under the parol evidence rule. In the alternative, defendants argue that, if Gedney's statements are deemed admissible, such statements are mere opinion or "puff," and do not give rise to express warranties.

We need not decide whether plaintiff presented substantial evidence that Gedney's statements to Comerford regarding the airplane created any express warranties or whether such warranties, if created, were breached, as plaintiff contends, because evidence of such statements was not properly before the jury at trial. The sale of the airplane constitutes the sale of goods and is thus governed by Article 2 of the Uniform Commercial Code (UCC), which provides in pertinent part that

> [w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but *subject to the provisions of this article on parol or extrinsic evidence (G.S. 25-2-202)* negation or limitation is inoperative to the extent that such construction is unreasonable.

N.C.G.S. § 25-2-316(1) (1986) (emphasis added). As stated in the statute, the provisions of Section 25-2-316(1) are subject to the parol evidence rule, which provides that

> [t]erms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
>
> (a) by course of dealing or usage of trade (G.S. 25-1-205) or by course of performance (G.S. 25-2-208); and
>
> (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

N.C.G.S. § 25-2-202 (1986). The reference to the parol evidence rule in Section 25-2-316(1) is intended to protect the seller "against false allegations of oral warranties." N.C.G.S. § 25-2-316 cmt. 2 (1986). Thus, evidence of any oral statements made by the seller to the buyer prior to or contemporaneous with the parties entering into a final written agreement which tend to contradict the terms of the written agreement are inadmissible unless (1) the written agreement was not intended by the parties as a final expression of their agreement; or (2) even if the writing was intended as a final expression of the parties' agreement, the evidence is of consistent additional terms which supplement the writing, and the writing was not intended as a complete and exclusive statement of the terms of the agreement. James J. White & Robert S. Summers, *Uniform Commercial Code* § 12-4 (3d ed. 1988).

In the instant case, plaintiff, through Comerford, and defendants, through Gedney, entered into a written agreement which expressly provided that "purchasers . . . understand that this is a final sale" and that "there are NO WARRANTIES, EXPRESS OR IMPLIED AS TO ANY MATTER WHATSOEVER, INCLUDING . . . THE CONDITION OF THE AIRCRAFT, PARTS OR ACCESSORIES . . . ." The evidence before this Court indicates that the writing was the final expression of the parties' agreement as to the terms contained therein.[1] Both Comerford and Gedney read and signed the writing, the validity of which is undisputed, the writing is unambiguous, and plaintiff presented no evidence that the writing was intended to be tentative and preliminary to a final draft, in which case the parol evidence rule would not apply. *See* John D. Calamari & Joseph M. Perillo, *Contracts* § 3-3 (3d ed. 1987). In fact, Comerford testified at trial that he knew that the effect of his signing the agreement was to "waive . . . any rights that I would have because [defendants were] asking me to say I'm accepting [the plane] as is without ever having flown it," yet he made the decision to sign it, albeit "reluctantly." Because plaintiff's evidence of the alleged express oral warranties made by Gedney contradicts the terms of the parties' written agreement disclaiming any express warranties "AS TO ANY MATTER WHATSOEVER, INCLUDING . . . THE CONDITION OF THE AIRCRAFT, PARTS OR ACCESSORIES," the jury never should have heard such evidence. The fact that the jury *did* hear the evidence is

---

1. The question of whether the writing was intended to be final is for the court. John D. Calamari & Joseph M. Perillo, *Contracts* § 3-3 (3d ed. 1987).

immaterial as the parol evidence rule is not a rule of evidence but one of substantive law which, when coupled with a proper objection, renders legally ineffective the prior oral contradictory statements.[2] *See* 2 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 251 (3d ed. 1988); *Lindsey v. North Carolina Farm Bureau Mut. Ins. Co.*, 103 N.C. App. 432, 436, 405 S.E.2d 803, 805 (1991) (in North Carolina, parol evidence admitted without objection must be considered by the fact finder). Accordingly, the trial court correctly granted defendants' JNOV motion with regard to this issue.[3]

## II

[2] Plaintiff argues that defendants breached the implied warranty of merchantability with regard to the sale of the airplane. Defendants argue that such warranty was properly excluded by the language of the Purchase Agreement.

The UCC, Section 25-2-314, provides in pertinent part that

[u]nless excluded or modified (G.S. 25-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

N.C.G.S. § 25-2-314(1) (1986). The dispositive question in the instant case with regard to the implied warranty of merchantability is whether defendants properly excluded it. Section 25-2-316 in relevant part provides:

---

2. Here, even though defendants did not object at trial to the introduction of evidence of Gedney's alleged oral statements, defendants had previously, unsuccessfully, made a motion in limine requesting exclusion of such evidence on the ground that it was barred by the parol evidence rule. Their motion was equivalent to an objection at trial, and sufficiently preserved the issue for appellate review. *State v. Moore*, 107 N.C. App. 388, 394-95, 420 S.E.2d 691, 696 (1992) (motion in limine sufficient to preserve issue for appellate review despite fact that party failed to object to the introduction of the evidence at trial).

3. We note that plaintiff presented evidence that Gedney orally agreed to correct certain problems discovered by Comerford after the signing of the Purchase Agreement, thus raising the question of post-sale oral modification of the written contract and disclaimer. *See Muther-Ballenger v. Griffin Elec. Consultants, Inc.*, 100 N.C. App. 505, 511, 397 S.E.2d 247, 250 (1990) (parol evidence rule would not bar evidence of oral modification made subsequent to the execution of the written contract). However, this issue was not presented to the jury at trial and is not argued by plaintiff before this Court.

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, . . . .

(3) Notwithstanding subsection (2)

(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; . . . .

N.C.G.S. § 25-2-316 (1986). Terms such as "as is" and the like "in ordinary commercial usage are understood to mean that the buyer takes the entire risk as to the quality of the goods involved." *Id.* cmt. 7.

In the instant case, the Purchase Agreement contained more than that necessary to properly exclude the implied warranty of merchantability: the mention of "merchantability" in conspicuous language, *see* N.C.G.S. § 25-1-201(10) (1986) (language is conspicuous if it is "so written that a reasonable person against whom it is to operate ought to have noticed it") and the provision that the sale of the plane was "as is." Comerford admitted at trial to an understanding of the effect of such language. We reject plaintiff's contention that the trial court erred in granting defendants' JNOV motion as to this issue.

### III

[3] Plaintiff argues that it presented substantial evidence of fraud on the part of defendants, and that therefore the trial court erred in granting defendants' JNOV motion as to this issue. We disagree.

Substantial evidence of fraud consists of "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *New Bern Pool & Supply Co. v. Graubart*, 94 N.C. App. 619, 627, 381 S.E.2d 156, 160 (1989), *aff'd*, 326 N.C. 480, 390 S.E.2d 137 (1990) (citation omitted). In the instant case, the evidence established that Comerford, on behalf of plaintiff, read and signed a Purchase Agreement which expressly provided that "there are NO REPRESENTATIONS . . . AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE

CONDITION OF THE AIRCRAFT, PARTS OR ACCESSORIES . . . ." At trial, Comerford, an experienced civil litigation attorney, acknowledged that he understood that the effect of the agreement would be to "waive any rights that I would have" because "I [was] accepting [the plane] as is without ever having flown it." Thus, because Comerford effectively agreed when he signed the Purchase Agreement that defendants made no representations whatsoever with regard to the plane, plaintiff is unable to establish the making of a *false* representation. Moreover, plaintiff failed to establish concealment of a material fact on the part of defendants because plaintiff presented no evidence that defendants knew of any defects in the plane. *See Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988) (knowledge and an intent to deceive are required in order to establish the *scienter* necessary for fraud). The evidence established that, at the time of plaintiff's purchase, the plane was close to being due for its annual inspection as well as its next one-hundred-hour inspection. Comerford himself testified that he had never had an annual inspection performed on one of his planes "where there wasn't work that had to be done in addition to just the routine inspection." Because plaintiff, through Comerford, assented to the terms of the agreement, as evidenced by Comerford's signature and his acknowledgement at trial to an understanding of its effect, and because plaintiff failed to present substantial evidence of *scienter* on the part of defendants, the issue of fraud should not have been submitted to the jury. Accordingly, the trial court correctly granted defendants' JNOV motion on this issue. The trial court's correct ruling in this regard makes it unnecessary to address plaintiff's assignment of error regarding his claim for unfair and deceptive trade practices.

Based on the foregoing, we discern

No error.

Judges WELLS and ORR concur.