JAMES MICHAEL GODFREY AND SHERRY JO LUSK, PLAINTIFFS v. RES-CARE, INC., DEFENDANT

No. COA03-790

No. COA03-791

(Filed 6 July 2004)

**1. Fraud— common law—motion for directed verdict—concealment of material fact**

The trial court did not err by denying defendant's motion for a directed verdict on plaintiffs' common law fraud claim even though defendant contends it had no duty to disclose to plaintiffs that it was negotiating to buy a company and employ a certain individual, because: (1) a duty to disclose arises in an arm's length negotiation where one party has taken affirmative steps to conceal material facts from the other; (2) plaintiffs presented suf-

GODFREY v. RES-CARE, INC.

[165 N.C. App. 68 (2004)]

ficient evidence that defendant was negotiating to buy the pertinent company and employ the pertinent individual while simultaneously concealing this fact from plaintiffs; and (3) the parol evidence rule did not prohibit plaintiffs from introducing evidence regarding the parties' negotiations prior to signing the agreement since in North Carolina parol evidence may be admitted to prove that a written contract was procured by fraud based on the fact that the allegations of fraud challenge the validity of the contract itself and not the accuracy of its terms.

2. **Fraud— instructions—evidence of employment claim—damages**

The trial court did not err by denying defendant's request to instruct the jury to disregard any evidence or inferences regarding plaintiffs' employment claim when considering damages for fraud, because: (1) the measure of damages for fraud in the inducement of a contract is the difference between the value of what was received and the value of what was promised, and is potentially trebled by N.C.G.S. § 75-16; and (2) the instruction allowed the jury to consider proper factors in determining plaintiffs' damages and the instructions did not direct the jury to determine or consider improper issues.

3. **Jury— verdict sheet—fraud—unfair and deceptive trade practices**

The trial court did not abuse its discretion in a common law fraud and unfair and deceptive trade practices case by submitting the verdict sheet to the jury even though defendant contends it was confusing and embodied several issues into one jury determination, because: (1) both the jury instructions and the verdict sheet utilized the North Carolina Pattern Jury Instructions on fraud, which allow a jury to find fraud in both affirmative representations and concealment of a material fact; (2) the parties agreed during the jury charge conference that the verdict sheet correctly questioned the jury regarding unfair and deceptive trade practices; and (3) by separating the fraud and unfair and deceptive trade practices issues and by allowing for separate answers, the verdict sheet offered three distinct alternatives to the jury.

4. **Costs— attorney fees—unfair and deceptive trade practices—unwarranted refusal to resolve matter**

The trial court did not err in a common law fraud and unfair and deceptive trade practices case by granting plaintiffs' motion

GODFREY v. RES-CARE, INC.

[165 N.C. App. 68 (2004)]

for attorney fees, because: (1) N.C.G.S. § 75-16.1 provides that the trial court may award attorney fees upon finding that defendant has willfully engaged in unfair and deceptive trade practices in violation of N.C.G.S. § 75-1.1 and has unwarrantedly refused to resolve the matter; (2) a finding of common law fraud necessarily establishes that unfair or deceptive acts have occurred in violation of N.C.G.S. § 75-1.1; and (3) the trial court's findings of fact in its 28 September 2002 order adequately support its conclusions of law as to both the willfulness of defendant's acts as well as defendant's unwarranted refusal to resolve the matter.

**5. Trials— motion for new trial—procedural irregularity**

The trial court did not abuse its discretion in a common law fraud and unfair and deceptive trade practices case by denying defendant's motion for a new trial, because: (1) contrary to defendant's assertion, there was no procedural irregularity regarding the trial court's decision not to instruct the jury regarding defendant's directed verdict as to the employment claims; and (2) the jury verdict was not contrary to law.

**6. Trials— motion for judgment notwithstanding verdict— denial of motion for directed verdict**

The trial court did not err in a common law fraud and unfair and deceptive trade practices case by denying defendant's motion for judgment notwithstanding the verdict, because: (1) where a trial court denies a motion for directed verdict made at the close of plaintiff's evidence, it is error for the trial court to then enter judgment in favor of defendant notwithstanding the verdict; and (2) plaintiffs presented sufficient evidence to withstand defendant's earlier motions for directed verdict.

**7. Trials— motion for relief from final judgment—failure to demonstrate extraordinary circumstances**

The trial court did not abuse its discretion in a common law fraud and unfair and deceptive trade practices case by denying defendant's motion for relief from final judgment under N.C.G.S. § 1A-1, Rule 60(b)(6), because: (1) the trial court properly instructed the jury regarding its determination of the amount of damages that would put plaintiffs in the same position as if the fraud had not been practiced on them; and (2) defendant failed to demonstrate that extraordinary circumstances exist that would require defendant to be relieved from judgment.

GODFREY v. RES-CARE, INC.

[165 N.C. App. 68 (2004)]

## 8. Fraud— employment claims—motion for directed verdict— false representation

The trial court did not err in a common law fraud and unfair and deceptive trade practices case by granting defendant's motion for directed verdict as to the employment claims based on the terms of the employment agreement allegedly being three years as opposed to at will, because plaintiffs failed to offer sufficient evidence that defendant made a false representation to plaintiff or that plaintiff was deceived by such representation.

Appeal by Res-Care, Inc., from judgment entered 29 July 2002 by Judge Timothy S. Kincaid in Catawba County Superior Court, and orders entered 19 August 2002 and 30 September 2002 by Judge Timothy S. Kincaid in Catawba County Superior Court. Heard in the Court of Appeals 29 March 2004.

*Patrick, Harper, & Dixon, L.L.P., by Stephen M. Thomas and Kimberly Whitley, for plaintiffs-appellees.*

*Kilpatrick Stockton, L.L.P., by Fred M. Wood, Jr., and C. Marshall Lindsay, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

James Michael Godfrey ("Godfrey") and Sherry Jo Lusk ("Lusk") (collectively, "plantiffs") sued Res-Care, Inc. ("defendant"), alleging common law fraud and unfair and deceptive trade practices arising out of the sale of Access, Inc. ("Access") to Communications Network Consultants ("CNC"), a subsidiary of defendant. On 16 July 2002, the jury found in favor of plaintiffs. In separate notices of appeal, defendant assigns error to the final judgment and post-judgment orders. Plaintiffs cross-assign error to the trial court order partially granting directed verdict in favor of defendant. Pursuant to N.C.R. App. P. 40 (2004), defendant's separate appeals were consolidated at oral argument before this Court. After reviewing the merits of both appeals, we hold the trial court committed no error.

The facts presented at trial tend to show the following: In 1997, Access was in the business of providing employment, residential, habilitation, and vocational training services to the mentally handicapped, mentally ill, and developmentally disabled. James McKelvey ("McKelvey"), Louis Pugh ("Pugh"), and plaintiffs were the four shareholders of Access. In July 1997, representatives of CNC

expressed interest in acquiring Access. Negotiations commenced between the two parties, and in May 1998, McKelvey and plaintiff Godfrey visited defendant's corporate offices in Louisville, Kentucky. During the summer and fall of 1998, negotiations between Access and defendant became increasingly more serious, and on 10 February 1999, the shareholders of Access signed a Letter of Intent for the sale of Access to CNC. On 17 March 1999, CNC and the shareholders of Access signed a Stock Purchase Agreement ("Agreement"), whereby plaintiffs, McKelvey, and Pugh each sold their respective interests in Access to CNC.

Throughout negotiations between the parties, plaintiffs expressed concern in selling their interests to defendant, a large corporation. Each shareholder of Access was a former employee of VOCA of North Carolina ("VOCA"), a large business also engaged in providing employment, residential, habilitation, and vocational training services to the mentally handicapped, mentally ill, and developmentally disabled. Plaintiffs informed defendant that the shareholders of Access left VOCA and formed Access because of philosophical differences they had with VOCA and its management. Plaintiffs further stated that in order for the shareholders of Access to sell their respective interests, the shareholders must be assured that they would never be affiliated with a company that acted or operated like VOCA. In initial meetings between the parties, Paul Dunn ("Dunn"), defendant's Chief Development Officer, responded to plaintiffs' concerns by stating that defendant was not like VOCA, and that it would never be like VOCA. Plaintiff Godfrey reiterated the shareholders' concerns about selling to a large corporation when he and McKelvey traveled to Louisville in May 1998. At that time, Dunn reassured plaintiff Godfrey that defendant was not like VOCA, and that it was not interested in buying VOCA because VOCA did not make enough profit and was poorly managed. In the Fall of 1998, plaintiffs met with Todd Graybill ("Graybill"), defendant's Vice President of the Central Region. During these meetings, plaintiffs informed Graybill that if there was a possibility that an association with VOCA might arise, the shareholders of Access would not sell their interests to defendant. Plaintiffs further stated that the shareholders of Access also would not sell their interests if an association with Ron Curran ("Curran"), the shareholders' former supervisor at VOCA, might arise. Defendant's representatives again assured plaintiffs that defendant was not going to purchase VOCA, and that defendant could not afford such a purchase.

Plaintiffs' continued employment was also a critical factor in the sale of Access. Plaintiff Godfrey discussed his potential employment with defendant during initial meetings between the parties, and subsequent negotiations commenced under the assumption that plaintiff Godfrey would work for defendant for two or three years after the sale of Access. Plaintiff Lusk also planned to work for defendant for some time after the sale of Access. However, prior to the actual sale of Access, defendant informed plaintiffs that their employment contracts with defendant would be terminable at-will. When plaintiffs noted that the employment termination provisions were not what had been previously negotiated, Graybill assured plaintiffs that the employment term "wasn't an issue."

A week after plaintiffs signed the Agreement, defendant announced that it had signed a Letter of Intent to purchase VOCA. Defendant subsequently informed plaintiff Godfrey that he "had nothing to worry about [and that] things were not going to change." Defendant also informed plaintiff Godfrey that Curran would be leaving North Carolina for a position outside the state. However, defendant subsequently named Curran Statewide Director, a position that required plaintiff Godfrey to work together with Curran and plaintiff Lusk to work directly beneath Curran. Defendant soon terminated plaintiff Godfrey, "truly without cause" according to Graybill. Plaintiff Lusk subsequently resigned after defendant refused to release her from the non-compete provision in her employment agreement.

On 1 December 1999, plaintiffs filed suit against defendant, alleging common law fraud and unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1. On 21 May 2002, defendant filed a motion for summary judgment. On 19 June 2002, the trial court denied the motion. Trial began on 25 June 2002, and defendant moved for directed verdict at the close of plaintiffs' evidence. The trial court granted defendant's motion "as to the [employment] claims, based on the terms of the [employment] agreement as three years as opposed to at will," but denied defendant's motion "as to the purported misrepresentation as to whether or not VOCA would be or wouldn't be bought; in other words, the VOCA issue." On 16 July 2002, the jury rendered a verdict in favor of plaintiffs on the issue of fraud, awarding $300,000 in damages to plaintiff Godfrey and $30,000 in damages to plaintiff Lusk. On 22 July 2002, defendant filed a motion for a new trial, a motion for judgment notwithstanding the verdict, and a motion for relief from final judgment. On 19 August 2002, the trial court denied each of defendant's motions. On 30

September 2002, the trial court filed an order taxing attorneys' fees and costs against defendant. Defendant appeals the judgment entered 29 July 2002, the order entered 19 August 2002, and the order entered 30 September 2002.

As an initial matter, we note that defendant's briefs contain arguments supporting only ten of its original fifteen assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2004), the five omitted assignments of error are thus deemed abandoned. Therefore, we limit our present review to those assignments of error properly preserved by defendant for appeal.

The issues on appeal are whether the trial court erred in (I) denying defendant's motion for a directed verdict; (II) denying defendant's request to instruct the jury regarding the directed verdict; (III) submitting the verdict sheet to the jury; (IV) granting plaintiffs' motion for attorneys' fees; (V) denying defendant's motion for a new trial; (VI) denying defendant's motion for judgment notwithstanding the verdict; (VII) denying defendant's motion for relief from final judgment; and (VIII) granting defendant's motion for directed verdict.

I.

[1] Defendant first assigns error to the trial court order denying defendant's motion for directed verdict. Defendant argues that plaintiffs failed to present sufficient evidence of an essential element of fraud. We disagree.

"On a defendant's motion for directed verdict, the trial court must determine whether the evidence, when considered in the light most favorable to the plaintiff, is sufficient to take the case to the jury." *Ward v. Beaton*, 141 N.C. App. 44, 47, 539 S.E.2d 30, 33 (2000), *appeal dismissed and cert. denied*, 353 N.C. 398, 547 S.E.2d 431 (2001). Where there is more than a scintilla of evidence supporting each element of a plaintiff's claim, the trial court should deny the motion for directed verdict. *Norman Owen Trucking v. Morkoski*, 131 N.C. App. 168, 172, 506 S.E.2d 267, 270 (1998).

While fraud has no all-embracing definition and is better left undefined lest crafty men find a way of committing fraud which avoids the definition, the following essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive,

(3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

*Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974).

Defendant argues that plaintiffs failed to present sufficient evidence that defendant concealed a material fact. Defendant asserts that it had no duty to disclose to plaintiffs that it was negotiating to buy VOCA and employ Curran. In support of this assertion, defendant cites *Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C.*, 124 N.C. App. 383, 389, 477 S.E.2d 262, 265-66 (1996), *disc. review denied*, 345 N.C. 340, 483 S.E.2d 163 (1997), where this Court held that in a real estate lease negotiation involving two commercial parties, the owner of the property does not have a duty to disclose to the lessor of the property that the owner is negotiating to sell the property to a third party. Defendant contends that the transaction in the instant case also involves two commercial parties, and that therefore defendant's non-disclosure of its plan to buy VOCA and employ Curran does not amount to the type of affirmative concealment necessary to establish fraud. We find this argument unconvincing.

"[E]ven if there is no duty to disclose information, if a seller does speak then he must make a full and fair disclosure of the matters he discloses." *Freese v. Smith*, 110 N.C. App. 28, 35, 428 S.E.2d 841, 846 (1993). The evidence presented at trial in the instant case demonstrates that plaintiffs made repeated inquiries into whether defendant was considering or would consider buying VOCA and employing Curran. Defendant's representatives responded to the inquiries by stating that VOCA was not a profitable company to purchase, that it was poorly managed by Curran, and that plaintiffs would not have to work for or with a company like VOCA or a supervisor like Curran. However, despite defendant's assurances to the contrary, throughout its negotiations between the parties, defendant was also actively negotiating to buy VOCA and employ Curran as supervisor of plaintiffs.

Although a duty to disclose generally arises out of a fiduciary relationship, *See, e.g., Link v. Link*, 278 N.C. 181, 179 S.E.2d 697 (1971), the Court has recognized that a duty to disclose arises in an arm's length negotiation where one party has taken affirmative steps to conceal material facts from the other. *See Ragsdale*, 286 N.C. at 139-40, 209 S.E.2d at 500-01. A fact is material "if the fact untruly asserted or wrongfully suppressed, if it had been known to the party, would have influenced [its] judgment or decision in making the con-

tract at all." *Machine Co. v. Bullock*, 161 N.C. 1, 7, 76 S.E. 634, 636 (1912). Both plaintiffs testified that throughout negotiations, plaintiffs made repeated comments that their willingness to sell Access to defendant was contingent on defendant's assurance that it would never associate with VOCA or Curran. Plaintiff Godfrey testified that after defendant purchased VOCA, Graybill contacted plaintiff Godfrey and apologized for not informing plaintiffs about the VOCA transaction. Plaintiff Godfrey also testified that Graybill stated that "I knew the VOCA deal was going down, but it was just like we were under a confidentiality agreement with you, we were under one with VOCA and we weren't at liberty to say anything." Although Graybill "would stop short of saying [defendant was] convinced that [Godfrey] wouldn't do the deal or anybody from Access wouldn't do the deal if they knew that [defendant] was going to purchase VOCA . . . ," Graybill testified that "folks knew what [Godfrey's] . . . feelings were towards VOCA, towards [Curran], and . . . chose not to test that." Graybill also testified that "there was uncertainty as to what [plaintiffs'] response would be" if plaintiffs knew about defendant's concurrent negotiations to buy VOCA. Furthermore, Graybill admitted that Dunn told him in January 1999 that defendant was negotiating with VOCA and that the negotiations should not be revealed. We conclude that the foregoing evidence, when viewed in the light most favorable to plaintiffs, sufficiently demonstrates that defendant took affirmative steps to conceal from plaintiffs the fact that defendant was negotiating to buy VOCA and employ Curran.

Defendant also argues that the evidence used by plaintiffs to prove the element of misrepresentation should not have been admitted as a matter of law. Defendant asserts that the parol evidence rule prohibited plaintiffs from introducing evidence regarding its oral discussions with defendant concerning VOCA and Curran. We find this argument unconvincing as well.

The parol evidence rule prohibits the admission of evidence of prior oral agreements "to vary, add to, or contradict [the terms of] a written instrument intended to be the final integration of the transaction." *Hall v. Hotel L'Europe, Inc.*, 69 N.C. App. 664, 666, 318 S.E.2d 99, 101 (1984); N.C. Gen. Stat. § 25-2-202 (2003). In the instant case, the Agreement contained the following merger clause:

> Entire Agreement. This Agreement, its Exhibits, Schedules and Annexes, and the documents executed on the Closing Date in connection herewith, constitute the entire agreement between

**GODFREY v. RES-CARE, INC.**

[165 N.C. App. 68 (2004)]

the parties hereto with respect to the subject matter hereof and supercede all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof, including but not limited to the Letter of Intent.

("merger clause").

Defendant contends that because the merger clause states that the Agreement is the final expression of the parties' agreement, plaintiffs were prohibited as a matter of law from introducing evidence concerning negotiations made prior to the execution of the Agreement. In support of this contention, defendant cites *Ace, Inc. v. Maynard*, 108 N.C. App. 241, 423 S.E.2d 504 (1992), *disc. review denied*, 333 N.C. 574, 429 S.E.2d 567 (1993). In *Ace*, the plaintiff sued for breach of warranty, fraud, and unfair and deceptive trade practices arising out of the sale of an airplane. This Court concluded that it was improper for the jury to consider the defendant's statements to the plaintiff regarding the condition of the plane because the statements were made prior to the parties signing the contract for sale and were thus subject to the parol evidence rule. *Id.* at 247, 423 S.E.2d at 508.

In our analysis in *Ace*, we noted that "plaintiff failed to establish concealment of a material fact on the part of defendants because plaintiff presented no evidence that defendants knew of any defects in the plane." *Id.* at 250, 423 S.E.2d at 510 (citations omitted). However, in the instant case, we concluded *supra* that plaintiff presented sufficient evidence that defendant was negotiating to buy VOCA and employ Curran while simultaneously concealing this fact from plaintiffs. Thus, we also conclude our holding in *Ace* is not applicable to the facts of the instant case.[1]

---

1. Defendant also cites *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283 (D.C. Cir. 1988) to support its contention. In *One-O-One*, the Court held that where an integration clause provides that "any and all prior understandings and agreements" are superceded, any reliance by the plaintiff on prior representations is unreasonable and any failure of defendant to disclose the existence of negotiations with another party is immaterial. *Id.* at 1286. We remind defendant that " 'with the exception of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State.' " *Soderlund v. Kuch*, 143 N.C. App. 361, 370, 546 S.E.2d 632, 638 (2001) (citation omitted). Moreover, in a subsequent case, the D.C. Circuit Court of Appeals limited the holding of *One-O-One* to its facts, noting that the conclusion "was plainly not intended to say that an integration clause bars fraud-in-the-inducement claims generally or confines them to claims of fraud in execution." *Whelan v. Abell*, 48 F.3d 1247, 1258 (1995) (citations omitted). According to the Court, "[s]uch a reading would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate." *Id.*

In North Carolina, parol evidence may be admitted into evidence to prove that a written contract was procured by fraud because "the allegations of fraud challenge the validity of the contract itself, not the accuracy of its terms[.]" *Fox v. Southern Appliances*, 264 N.C. 267, 270, 141 S.E.2d 522, 525 (1965). Where a contract or transaction is induced by misrepresentations, the fraud and the contract are " 'distinct and separable—that is, the representations are usually not regarded as merged in the contract.' " *Id.* (quoting 23 Am. Jur., Fraud and Deceit, § 23, p. 775-76). We conclude that in the instant case, the parol evidence rule did not prohibit plaintiffs from introducing evidence regarding the parties' negotiations prior to signing the Agreement. Therefore, we hold that the trial court did not err in denying defendant's motion for directed verdict.

## II.

**[2]** Defendant next assigns error to the trial court's jury instructions. Defendant argues that because the trial court granted defendant directed verdict "as to the [employment] claims, based on the terms of the [employment] agreement as three years as opposed to at will," the trial court was required to instruct the jury to disregard any evidence or inferences regarding plaintiff's employment claims. We disagree.

To prevail on this assignment of error, defendant must demonstrate that: (1) the requested jury instruction was a correct statement of law and was supported by the evidence; (2) that the jury instruction given, considered in its entirety, failed to encompass the substance of the law requested; and (3) that such failure likely misled the jury. *Liborio v. King*, 150 N.C. App. 531, 534, 564 S.E.2d 272, 274, *disc. review denied*, 356 N.C. 304, 570 S.E.2d 726 (2002). We conclude that defendant has failed to meet this burden.

At the jury charge conference, the trial court concluded that plaintiffs' potential earnings at Res-Care were a proper measure for determining plaintiffs' fraud damages. The trial court stated that plaintiffs' damages in the case amounted to their potential earnings had they not sold Access. Thus, the trial court concluded, plaintiffs' employment evidence was relevant to their damage claims. The trial court then provided the following pertinent instructions:

> To determine the amount, if any, that you award to a respective plaintiff for actual damages, you will consider all the evidence that you have heard. Damages are compensation in money, in an

**GODFREY v. RES-CARE, INC.**

[165 N.C. App. 68 (2004)]

amount so far as is possible, to restore a respective plaintiff to his or her original condition or position, which may include lost wages or lost benefits.

. . . .

There is not any fixed mathematical formula for placing value on damages. [Plaintiffs'] damages are to be reasonably determined from the evidence presented in the case. . . . Your award must be fair and just.

. . . .

You will determine the amount of damages by applying logic and common sense to the evidence; however, you may not reward any damages based upon speculation and conjecture.

The trial court did not instruct the jury to determine whether defendant's representations concerning plaintiffs' employment were fraudulent or whether defendant committed unfair and deceptive trade practices with regard to plaintiffs' employment contract. Instead, the trial court allowed the jury to consider plaintiffs' employment evidence to determine how to best restore plaintiffs to their original conditions and positions.

It is elementary that a plaintiff in a fraud suit has a right to recover an amount in damages "which will put him in the same position as if the fraud had not been practiced on him." *Sykes v. Insurance Co.*, 148 N.C. 13, 19, 61 S.E. 610, 612 (1908) (quoting *Hedden v. Griffen*, 136 Mass. 229, 232 (1884)). "The measure of damages for fraud in the inducement of a contract is the difference between the value of what was received and the value of what was promised, and is potentially trebled by N.C.G.S. § 75-16." *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 130, 388 S.E.2d 538, 556 (1990) (internal citations omitted). It is the jury's responsibility to determine the exact amount of damages from the evidence presented at trial. *Rankin v. Helms*, 244 N.C. 532, 538, 94 S.E.2d 651, 656 (1956). However, the evidence presented to the jury cannot be so indefinite and uncertain that it does not furnish a basis for the jury to estimate damages. *Id.*

We conclude that the trial court's instruction, considered in its entirety, encompassed the substance of the law of fraud damages. The instruction allowed the jury to consider proper factors in determining plaintiffs' damages, and the instruction did not direct the jury

to determine or consider improper issues. Therefore, we hold that the trial court did not err in denying defendant's request to instruct the jury to disregard any evidence or inferences regarding plaintiffs' employment claims.

### III.

**[3]** Defendant next assigns error to the trial court's decision to submit the verdict sheet to the jury. Defendant argues that the verdict sheet was impermissibly confusing. We disagree.

The form and the number of issues submitted to the jury is within the trial court's discretion. *Wilson v. Pearce*, 105 N.C. App. 107, 112, 412 S.E.2d 148, 150, *disc. review denied*, 331 N.C. 291, 417 S.E.2d 72 (1992). However, the issues "should be formulated so as to present separately the determinative issues of fact arising on the pleadings and evidence." *Stacy v. Construction, Inc.*, 119 N.C. App. 115, 122, 457 S.E.2d 875, 880, *disc. review denied*, 341 N.C. 421, 461 S.E.2d 761 (1995). "It is misleading to embody in one issue two propositions as to which the jury might give different responses." *Id.* (citation omitted).

Because an action for unfair and deceptive trade practices is a distinct action separate from fraud, *United Virginia Bank v. Air-Lift Associates*, 79 N.C. App. 315, 320, 339 S.E.2d 90, 93 (1986), at the close of all the evidence in the instant case, two issues were before the jury. First, the jury was to determine whether defendant committed fraud against plaintiffs. Second, the jury was to determine whether defendant committed unfair and deceptive trade practices by misrepresenting information to plaintiffs. The verdict sheet contained the following pertinent questions:

1. Was the plaintiff . . . damaged by fraud of the defendant . . . ?

*Answer*:_____

2. Did the defendant, Res-Care, Inc. falsely represent to the plaintiff . . . that plaintiffs would not have to work with VOCA or Ron Curran, or falsely represent that Res-Care, Inc., was not acquiring and would not acquire Voca?

*Answer*:_____

    a. Was the conduct of the defendant . . . in commerce or did it affect commerce?

    *Answer*:_____

**GODFREY v. RES-CARE, INC.**

[165 N.C. App. 68 (2004)]

    b. Was the conduct of the defendant . . . a proximate cause of injury to the plaintiff . . . ?

    *Answer*:_____

The verdict sheet instructed the jury to answer the second question regardless of the jury's answer to the first question. The verdict sheet also instructed the jury to answer subsection (a) of the second question only if the jury's answer to the second question was "yes." The verdict sheet further instructed the jury to answer subsection (b) only if the jury's answer to subsection (a) was "yes." Finally, the verdict sheet instructed the jury to answer the questions contained in the damage section only if the jury's answer to the first question was "yes" or if all of the jury's answers to the second question and its subsections were "yes."

    Both the jury instructions and the verdict sheet utilized the North Carolina Pattern Jury Instructions on fraud, which allow a jury to find fraud in both affirmative misrepresentations and concealment of a material fact. N.C.P.I. 800.00. The parties agreed during the jury charge conference that the verdict sheet correctly questioned the jury regarding unfair and deceptive trade practices. By separating the fraud and unfair and deceptive trade practices issues and by allowing for separate answers, the verdict sheet offered three distinct alternatives to the jury. The jury could find (1) that defendant committed fraud, or (2) that defendant committed unfair and deceptive trade practices by making false representations, or (3) that defendant committed both fraud and unfair and deceptive trade practices. Thus, we conclude that the verdict sheet does not embody several issues into one jury determination, and is not impermissibly confusing or improper. Therefore, we hold that the trial court did not err in submitting the verdict sheet to the jury.

## IV.

**[4]** Defendant next assigns error to the trial court order awarding attorneys' fees in favor of plaintiffs. Defendant argues that plaintiffs "lack any basis for recovering the fees and costs sought in their Petition for Attorneys' Fees." We disagree.

    Plaintiffs' complaint clearly alleges that during negotiations between the parties, defendant committed fraud as well as unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 (2003). As discussed *supra*, defendant was not entitled to a directed verdict on plaintiffs' fraud claim, and the fraud claim was properly

submitted to the jury. After the jury found plaintiffs were damaged by fraud committed by defendant, plaintiffs moved the trial court to award attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1 (2003). N.C. Gen. Stat. § 75-16.1 provides that the trial court may award attorneys' fees upon finding that defendant has "willfully engaged" in unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 and has unwarrantedly refused to resolve the matter. As the trial court correctly noted in the order awarding attorneys' fees, a finding of common law fraud necessarily "establishes that unfair or deceptive acts have occurred in violation of [N.C. Gen. Stat. §] 75-1.1." *Davis v. Sellers*, 115 N.C. App. 1, 9, 443 S.E.2d 879, 884 (1994), *disc. review denied*, 339 N.C. 610, 454 S.E.2d 248 (1995). The trial court's findings of fact in its 30 September 2002 order adequately support its conclusions of law as to both the willfulness of defendant's acts as well as defendant's unwarranted refusal to resolve the matter. Therefore, we hold that the trial court did not err in awarding attorneys' fees in favor of plaintiffs.

V.

**[5]** Defendant next assigns error to the trial court order denying its motion for a new trial. Defendant argues that a procedural irregularity denied defendant the right to a fair trial, and that because plaintiffs failed to produce sufficient evidence of fraud, the jury verdict was contrary to law. We disagree.

N.C.R. Civ. P. 59(a) permits a trial court to grant a new trial where the trial court finds "[a]ny irregularity by which any party was prevented from having a fair trial . . . [or] [i]nsufficiency of the evidence to justify the verdict or that the verdict is contrary to law." N.C. Gen. Stat. § 1A-1, Rule 59(a)(1), (7) (2003). Defendant asserts that a new trial is required in the instant case because defendant "was burdened by a procedural irregularity"—specifically, the trial court decision not to instruct the jury regarding defendant's directed verdict "as to the [employment] claims, based on the terms of the [employment] agreement as three years as opposed to at will." However, we concluded *supra* that the trial court's jury instructions were proper because the instructions (1) encompassed the substance of the law of fraud damages, and (2) did not instruct the jury to determine whether defendant committed fraud or unfair and deceptive trade practices with regard to the employment agreement. Therefore, we are unconvinced that the trial court's jury instructions amounted to a "procedural irregularity."

GODFREY v. RES-CARE, INC.

[165 N.C. App. 68 (2004)]

Defendant asserts in the alternative that a new trial is required because the jury verdict was contrary to law. In support of this assertion, defendant submits that plaintiffs failed to present sufficient evidence to establish fraud. Specifically, defendant reasserts its arguments that (1) plaintiffs failed to demonstrate defendant concealed a material fact, and (2) the parol evidence rule prohibited plaintiffs from introducing the evidence used to prove the misrepresentation and concealment. However, we concluded *supra* that plaintiffs produced sufficient evidence to demonstrate that defendant took affirmative steps to conceal its on-going negotiations to buy VOCA and employ Curran. Furthermore, because plaintiffs challenged the validity of the contract rather than its terms, we also concluded *supra* that the trial court did not err in allowing plaintiffs to introduce parol evidence regarding their negotiations with defendant prior to signing the Agreement. Therefore, we are unconvinced that the jury verdict was contrary to law.

Our review of a discretionary ruling denying a motion for a new trial is limited to determining whether the record demonstrates that the trial court manifestly abused its discretion. *Pittman v. Nationwide Mutual Fire Ins. Co.*, 79 N.C. App. 431, 434, 339 S.E.2d 441, 444, *disc. review denied*, 316 N.C. 733, 345 S.E.2d 391 (1986). Having concluded *supra* that plaintiffs presented sufficient evidence to justify the jury verdict and that the trial court did not engage in procedural irregularity when instructing the jury, we now conclude that the record does not demonstrate any manifest abuse of discretion by the trial court. Therefore, we hold that the trial court did not err in denying defendant's motion for new trial.

## VI.

[6] Defendant next assigns error to the trial court's denial of defendant's motion for judgment notwithstanding the verdict. Defendant argues that "[t]his case should have never been submitted to the jury . . . [because defendant] was entitled to a directed verdict at the close of [p]laintiffs' evidence and at the close of all the evidence." We disagree.

"The test for determining the sufficiency of the evidence when ruling on a motion for judgment notwithstanding the verdict is the same as that applied when ruling on a motion for directed verdict." *DeHart v. R/S Financial Corp.*, 78 N.C. App. 93, 99, 337 S.E.2d 94, 98 (1985), *disc. review denied*, 316 N.C. 376, 342 S.E.2d 893 (1986).

Thus, where a trial court denies a motion for directed verdict made at the close of plaintiff's evidence, it is error for the trial court to then enter judgment in favor of defendant notwithstanding the verdict. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 378, 329 S.E.2d 333, 342 (1985); *Horton v. Insurance Co.*, 9 N.C. App. 140, 144, 175 S.E.2d 725, 727 (1970). In the instant case, we concluded *supra* that plaintiffs presented sufficient evidence to withstand defendant's earlier motions for directed verdict. Therefore, we now hold that the trial court did not err in denying defendant's motion for judgment notwithstanding the verdict.

## VII.

**[7]** Defendant next assigns error to the trial court's denial of defendant's motion for relief from the final judgment. Defendant argues that relief from judgment is proper in the instant case because the trial court erred in instructing the jury. We disagree.

N.C.R. Civ. P. 60(b)(6) (2003) allows a party to obtain relief from judgment for "[a]ny . . . reason justifying relief from the operation of the judgment." Although Rule 60(b)(6) has been described as a "grand reservoir of equitable power to do justice in a particular place," 7 Moore's Federal Practice, para. 60.27[2] at 375 (2d ed 1979), a court may only set aside a judgment pursuant to Rule 60(b)(6) upon a showing that (1) extraordinary circumstances exist, and (2) justice demands relief. *Thacker v. Thacker*, 107 N.C. App. 479, 481, 420 S.E.2d 479, 480, *disc. review denied*, 332 N.C. 672, 424 S.E.2d 407 (1992). Furthermore, absent a showing that the trial court abused its discretion in denying a motion for relief from judgment, this Court will not disturb the decision of the trial court below. *Kennedy v. Starr*, 62 N.C. App. 182, 187, 302 S.E.2d 497, 500, *disc. review denied*, 309 N.C. 321, 307 S.E.2d 164 (1983).

Defendant argues that the extraordinary relief provided by Rule 60(b)(6) is necessary in the instant case because the jury returned a verdict in favor of plaintiff Godfrey in the amount of $300,000, "or precisely Mr. Godfrey's compensation had he continued his employment for the three-year period he alleged he was promised." Defendant asserts that the jury awarded plaintiff Godfrey this amount only because the trial court refused to instruct the jury regarding the directed verdict previously granted in favor of defendant. However, we concluded *supra* that the trial court properly instructed the jury regarding its determination of the amount of damages that would put plaintiffs " 'in the same position as if the fraud had not been practiced

on [them].' " *Sykes*, 148 N.C. at 19, 61 S.E. at 612. Furthermore, the jury returned a verdict awarding plaintiff Lusk $30,000 in damages— $165,000 *less* than plaintiff Lusk would have earned "had [s]he continued h[er] employment for the three-year period [s]he alleged [s]he was promised." Thus, we conclude that defendant has failed to demonstrate that the extraordinary circumstances exist that require defendant be relieved from judgment in the instant case. Therefore, we hold that the trial court did not err in denying defendant's motion for relief from judgment.

## VIII.

[8] Plaintiffs cross-assign error to the trial court order granting directed verdict in favor of defendant "as to the [employment] claims, based on the terms of the [employment] agreement as three years as opposed to at will." Plaintiffs argue that they presented sufficient evidence regarding the employment claims to withstand defendant's directed verdict motion. We disagree.

To survive a motion for directed verdict on a fraud claim, a plaintiff is required to provide sufficient evidence that the defendant concealed or made a false representation concerning a material fact. *Ragsdale*, 286 N.C. at 139, 209 S.E.2d at 500. The plaintiff must also provide sufficient evidence that the defendant's false representation or concealment deceived him. *Id.*

In the instant case, plaintiffs testified at trial that negotiations with defendant commenced under the assumption that the shareholders of Access would work for defendant for two or three years. However, plaintiffs also admitted into evidence the Letter of Intent delivered to plaintiffs on 10 February 1999 as well as a facsimile of the Agreement delivered to plaintiffs on 4 March 1999. Both documents clearly state that the terms of plaintiffs' continued employment would be mutually agreed on prior to the actual sale of Access on 29 March 1999. Furthermore, plaintiff Godfrey testified that two or three years of continued employment was only "the framework that [the parties] operated under," and that the discussions he had with defendant concerning his employment produced "draft agreements" that were "a launching pad for negotiations." Moreover, both plaintiffs admitted that prior to closing on 29 March 1999, they were aware that the Agreement contained at-will employment terms rather than the two or three-year employment terms they sought. When plaintiffs contacted Graybill about the at-will employment terms, Graybill informed plaintiffs that the terms were final and "pretty much it was

take it or leave it." Viewing this evidence in the light most favorable to plaintiffs, we nevertheless conclude that plaintiffs failed to offer sufficient evidence that defendant made a false representation to plaintiff or that plaintiff was deceived by such representation. Therefore, we hold that the trial court did not err in granting defendant directed verdict on plaintiffs' employment claims.

IX.

In conclusion, we hold that the trial court did not err in (I) denying defendant's motion for directed verdict; (II) denying defendant's requested jury instructions; (III) submitting the verdict sheet to the jury; (IV) awarding attorneys' fees in favor of plaintiffs; (V) denying defendant's motion for new trial; (VI) denying defendant's motion for judgment notwithstanding the verdict; (VII) denying defendant's motion for relief from judgment; and (VIII) granting defendant directed verdict on plaintiffs' employment claims.

No error.

Judges LEVINSON and THORNBURG concur.