Wedderburn Corp. v. Jetcraft Corp., 2015 NCBC 101.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 757

WEDDERBURN CORPORATION, )
               Plaintiff, )
)
          v. )
)
JETCRAFT CORPORATION and GEMINI )
AVIATION (BERMUDA), LTD., )
             Defendants. )

**OPINION AND ORDER**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Defendants' Motion to Dismiss Amended Complaint ("Motion to Dismiss"), pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). On July 30, 2015, the Court held a hearing on Defendants' Motion to Dismiss.

THE COURT, after considering the Motion to Dismiss, the briefs in opposition and support thereof, and arguments of counsel, CONCLUDES as stated herein.

> *Nelson Mullins Riley & Scarborough LLP, by Reed J. Hollander, Esq. and Gruber Hurst Johansen Hail & Shank LLP, by Trey H. Crawford, Esq. and Priya A. Bhasker, Esq.,* pro hac vice*, for Plaintiff.*
>
> *Moore & Van Allen PLLC, by John A. Zaloom, Esq. and Christopher D. Tomlinson, Esq. for Defendants.*

McGuire, Judge.

PROCEDURAL BACKGROUND

1. On January 20, 2015, Plaintiff initiated this lawsuit by filing its complaint. The action was designated No. 15 CVS 757 by the Wake County Clerk of Court.

2.     On January 22, 2015, this case was designated to the North Carolina Business Court and assigned to the undersigned.

3.     On April 20, 2015, Plaintiff filed its First Amended Complaint ("Complaint"). The Complaint alleges claims against Defendants for revocation of acceptance, breach of contract, breach of express warranties, breach of implied warranties, fraudulent inducement to contract, fraud, unfair and deceptive trade practices, negligent misrepresentation, rescission, and exemplary damages.

4.     On May 26, 2015, Defendants filed the Motion to Dismiss.

5.     The Motion to Dismiss has been fully briefed and argued and is ripe for determination by the Court.

FACTS

6.     Plaintiff Wedderburn Corporation ("Wedderburn" or "Plaintiff") is an aircraft charter company formed to charter a private business jet worldwide, and more specifically into and within Europe.  Plaintiff is organized under the laws of St. Vincent and the Grenadines.

7.     Defendant Jetcraft Corporation ("Jetcraft") is an experienced aircraft broker that assists buyers in locating and purchasing aircraft.  Jetcraft is organized under the laws of North Carolina and maintains its principal place of business in North Carolina.[1]

8.     Defendant Gemini Aviation (Bermuda), LTD is organized under the laws of Bermuda and was incorporated in late July 2013 to serve as a special purpose vehicle on behalf of Jetcraft.

---

[1] At the hearing, Defendants' counsel informed the Court that while Jetcraft maintains an office in North Carolina, its headquarters and primary place of business is in Minnesota.  The Court, however, must accept the allegations in the Amended Complaint as true for purposes of deciding this motion.

9. In 2013, Plaintiff sought an aircraft that was airworthy and compliant with the European Aviation Safety Agency ("EASA") rules and regulations. EASA is a European Union regulatory agency responsible for aviation safety in Europe. In order to operate in Europe, an aircraft must have first obtained all necessary EASA supplement type certificates ("STCs"). Without the STCs, an aircraft cannot legally be chartered in Europe.

10. In spring 2013, Plaintiff began discussions with Jetcraft regarding potential acquisition of a Bombardier Global Express jet aircraft bearing serial number 9036 (the "Aircraft"). Plaintiff informed Jetcraft that the Aircraft must be airworthy, EASA compliant, and fully operational and capable of charter in time for Plaintiff to begin flights in Europe in spring 2014. These requirements were "conditions precedent" to Plaintiff's obligation to purchase the Aircraft. Jetcraft represented that the Aircraft would be delivered to Plaintiff on or before September 30, 2013. At Jetcraft's recommendation, Plaintiff contracted with Jet Aviation St. Louis, Inc. ("JASL") to perform work necessary to bring the Aircraft into compliance with EASA regulations. Jetcraft representatives told Plaintiff that JASL was Jetcraft's "agent."

11. On July 5, 2013, Plaintiff and Jetcraft entered into an Aircraft Purchase Agreement ("APA"). The APA provided that Plaintiff would pay Jetcraft $14,700,000 for the Aircraft, and that the sale of the Aircraft would close on or before September 30, 2013. The APA contained a prominent disclaimer stating that the Aircraft was being sold "as is, where is, with all faults," disclaiming any warranties and waiving Seller's liability for loss of business, lost profit, or other consequential and special damages.[2] Plaintiff alleges, however, that at that time Jetcraft entered into the APA, it "never intended to comply with its

---

[2] Defs.' Br. Supp. Mot. Dismiss Ex. A.

obligations under the APA" and "actively concealed and misrepresented [the Aircraft's] non-compliant state in order to induce Wedderburn to take delivery of the Aircraft."[3]

12. The APA contained express "conditions precedent" that Jetcraft was required to meet before Plaintiff was obligated to consummate the purchase and close on the sale. The conditions precedent included, *inter alia*, that Jetcraft was required to correct "discrepancies" (defined in the APA to include defects and maintenance problems) discovered with the Aircraft at Jetcraft's expense, and that the Aircraft would be EASA compliant. The APA provided that if the conditions precedent were not met Plaintiff was not required to close on the sale, and could terminate the purchase and get a refund of the purchase price.

13. The APA provided for Plaintiff to take a "Pre-Purchase Inspection Flight" of the Aircraft. Plaintiff took the inspection flight in late August 2013. The test flight revealed several discrepancies. Nevertheless, the parties discussed closing on the sale in September but allowing Jetcraft additional time after the closing to correct the discrepancies. During the discussions, Peter Antonenko ("Antonenko"), Jetcraft's COO, represented to Plaintiff that the discrepancies would be corrected "within the following months" and that Plaintiff "would get what they had bargained for in the APA by the time the Aircraft was delivered back to service."[4]

14. Based on Jetcraft's representations, on September 5, 2013, the parties entered into an Aircraft Purchase Agreement Rider No. 1 ("Rider"). The Rider stated that "the parties hereto desire to proceed with Closing prior to correction of the Discrepancies" and that the Rider "set forth, for clarity purposes, some particular obligations and matters which will occur post-Closing."[5] The Rider set out Jetcraft's obligation to pay for the correction of the

---

[3] Am. Compl. ¶15.
[4] *Id.* ¶21.
[5] Defs.' Br. Supp. Mot. Dismiss Ex. B.

discrepancies after the closing and listed each of the specific discrepancies for which Jetcraft was responsible. The Rider did not contain any further obligations regarding the EASA compliance of the Aircraft. Finally, the Rider provided as follows:

> Nothing in this Agreement shall be regarded as having created or imposed upon Purchaser or Seller any increased or additional obligations or undertakings under the [APA]. The purpose of this Rider is to clarify the parties' obligations pursuant to the [APA] and that are to occur post-Closing. This Rider is to be incorporated into the terms of the [APA]. The entirety of the [APA] remains in full force and effect without change.[6]

15. On September 6, 2013, the parties closed the sale of the Aircraft. Plaintiff executed an "Aircraft Delivery Receipt" ("Delivery Receipt") that "acknowledge[d] delivery and acceptance of" the Aircraft.[7] The Receipt also provided, in part, as follows:

> Purchaser hereby acknowledges that the Aircraft satisfies all of the requirements, terms and conditions of the [APA]. By reason of the execution and delivery by Purchaser of this Aircraft Delivery Receipt, it is conclusively presumed that (i) Purchaser has approved and accepted the Aircraft and the Aircraft Documents . . . **"As Is, Where is"** in its then current technical condition and state of repair, with all faults, limitations and defects (whether hidden or apparent), regardless of cause; and (ii) except for Seller's warranty of title to the Aircraft contained in the [APA] and Warranty Bill of Sale, Seller has not made with respect to the condition of the Aircraft any representation, warranty or guaranty of any kind, express or implied, whether arising in, law, in equity, in contract, or in tort, including, without limitation, any implied warranty of merchantability, airworthiness, design, condition, or fitness for a particular use.[8]

16. On September 6, 2013, Jetcraft executed a "Warranty Bill of Sale" that transferred to Plaintiff "all right, title and interest in and to the Aircraft" and "good and marketable title … free and clear of any and all liens, claims . . . ."[9] The Warranty Bill of Sale also stated that the Aircraft was being sold and delivered "AS IS, WHERE IS, AND WITH ALL FAULTS," and without express or implied warranties.[10]

---

[6] *Id.*
[7] Defs.' Br. Supp. Mot. Dismiss Ex. C.
[8] *Id.* (emphasis in original).
[9] Defs.' Br. Supp. Mot. Dismiss Ex. D.
[10] *Id.* (capitalization in original).

17.     On October 15, 2013, Plaintiff entered into a contract with JASL to correct the discrepancies in the Aircraft.  The work on the corrections took longer than expected, and the Aircraft was returned to Plaintiff on May 21, 2014.  In addition, Jetcraft did not obtain the last of the STCs needed for compliance with the EASA regulations until November 2014.  Plaintiff has operated the Aircraft since November 2014.

18.     Plaintiff alleges that in May 2014, Jetcraft represented to Plaintiff that Jetcraft had been seeking the STCs since January 2014.  Plaintiff further alleges that it later discovered that Jetcraft had not started the process of obtaining the STCs until after May 21, 2014.  Plaintiff alleges that had it known this, it would not have taken delivery of the Aircraft on May 21, 2014.

19.     On June 2, 2014, Plaintiff notified Jetcraft of "material breaches of the APA and Rider" and that Plaintiff was incurring damages as a result of the breaches.[11]  Plaintiff also alleges that it sent Jetcraft "notice revoking acceptance of the Aircraft and demanded refund of the purchase price," but it does not allege on what date or by what means such notice was provided.[12]  On July 31, 2014, Jetcraft's counsel sent a letter to Plaintiff confirming Jetcraft's obligation to pay for the repair of the discrepancies.  There is no allegation in the Amended Complaint that Jetcraft did not pay for the work performed by JASL to correct the discrepancies.

20.     Plaintiff alleges that as a result of the delays in getting the discrepancies repaired and obtaining the STCs it was required to lease other aircrafts to meet its charter commitments.[13]  Plaintiff also alleges that it "lost business opportunities" and incurred other consequential damages.[14]

---

[11] Am. Compl. ¶ 29.
[12] *Id.* ¶ 36.
[13] *Id.* ¶¶ 26, 28, and 32.
[14] *Id.* ¶ 32.

<u>DISCUSSION</u>

*Rule 12(b)(6) Standard*

21.     Defendants have moved to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).  In reviewing a 12(b)(6) motion to dismiss, the Court asks "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987). To make this determination, the Court is to take the well-pleaded allegations of the complaint as true. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Strickland v. Hedrick*, 194 N.C. App. 1, 20 (2008).  "[T]he trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster v. Francis*, 199 N.C. App. 572, 577 (2009).[15]

22.     A complaint may be properly dismissed under Rule 12(b)(6) if: "(a) the complaint on its face reveals that no law supports plaintiff's claim; (b) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (c) any fact disclosed in the complaint necessarily defeats plaintiff's claim." *Cold Springs Ventures, LLC v. Gilead Scis., Inc.*, 2014 NCBC LEXIS 59, *6 (N.C. Super. Ct. 2014) (citing *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986)).

*Choice of Law*

23.     The first question the Court must address is the appropriate law to be applied to the determination of Defendants' motion to dismiss.  The APA contains a

---

[15] Plaintiff did not attach copies of the APA, Rider, Delivery Receipt, or Warranty Bill of Sale to the Amended Complaint.  Defendants, however, attached the documents to their Motion to Dismiss.

provision stating that "[t]his Agreement shall in all respects be governed by, and construed in accordance with, the laws of New York without regard to its choice of laws provisions."[16] Article IV of the Rider echoes this provision, stating "[t]his agreement, and all the rights and obligations hereunder shall be governed by the laws of the state of New York."[17]

24.     Generally, "North Carolina will give effect to a contractual provision agreeing to a different jurisdiction's substantive law." *Triad Packaging, Inc. v. SupplyONE, Inc.*, 925 F. Supp. 2d 774, 786 (W.D.N.C. 2013). North Carolina, however, will not apply the chosen state's law if "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of [North Carolina]." *Cable Tel Servs. v. Overland Contracting, Inc.*, 154 N.C. App. 639, 643–44 (2002) (applying North Carolina law to a contract dispute despite a Colorado choice of law provision because there was no substantial relationship between the parties or transaction to Colorado); *see also Mosteller Mansion, LLC v. Mactec Eng'g & Consulting of Georgia, Inc.*, 190 N.C. App. 674 (2008) (in determining whether the choice of law provision was enforceable, the court looked to whether the parties had a "substantial relationship" to the state of the defendant's principal place of business); *Triad Packaging, Inc.*, 925 F. Supp. 2d at 786 (applying North Carolina substantive law despite a Delaware choice of law provision).

25.     Here, Defendants do not contend that New York has a substantial relationship to the parties or the transaction in this action. Rather, Defendants argue that the choice of law provisions should be enforced because the parties are sophisticated business entities that freely chose to apply New York law to this transaction.  Plaintiff

---

[16] Defs.' Br. Supp. Mot. Dismiss Ex. A, § 8.19.
[17] Defs.' Br. Supp. Mot. Dismiss Ex. B.

counters that the Court should not enforce the choice of law provisions because there is no substantial relationship between the parties or the alleged transaction underlying the Complaint and the chosen state of New York. On the other hand, the Amended Complaint alleges that Jetcraft is organized under the laws of North Carolina and maintains its principal place of business in North Carolina.[18]

26. The record before the Court reveals no connection between these parties or the transaction and the State of New York. Significantly, Defendants concede that "the relevant substantive law of North Carolina is substantially the same as that of New York and leads to the same conclusions."[19] Accordingly, the Court will apply North Carolina substantive law, as it does not violate Defendants' due process rights. *See Stetser v. TAP Pharm. Prods. Inc.*, 165 N.C. App. 1, 16 (2004) (["T]he trial court's unsubstantiated choice to apply North Carolina law to the plaintiffs' claims does not violate defendants' due process rights unless a material difference exists between North Carolina law and the law of another jurisdiction connected with this lawsuit.").

> *Plaintiff's Waiver of Conditions Precedent, Disclaimers, and Acceptance of Aircraft "As is, Where is"*

27. The disposition of this Motion is largely dictated by Plaintiff's waiver of the conditions precedent in the APA, its acceptance of the Aircraft "as is, where is," and its disclaimers of any warranties and representations by Defendants. Plaintiff's claims turn on its allegations that Defendants misrepresented the condition of the Aircraft and its EASA compliance. The Complaint, however, alleges that Plaintiff closed on the sale and took delivery of the Aircraft despite Plaintiff's knowledge of discrepancies and its knowledge that the Aircraft was not EASA compliant. This waived the conditions precedent in the

---

[18] Am. Comp. ¶ 5.
[19] Defs.' Br. Supp. Mot. Dismiss, p. 9.

APA that Defendants obtain EASA compliance. *Demeritt v. Springsteed*, 204 N.C. App. 325, 329 (2010) ("[A] party may waive a condition precedent by performing on the contract despite knowledge that a condition has not occurred.") (citing *Fletcher v. Jones*, 314 N.C. 389 (1985)).

28. Plaintiff also executed the APA and Delivery Receipt, and accepted the Warranty Bill of Sale, each of which contained "as is, where is" language in which Plaintiff acknowledged that it was accepting the Aircraft with all faults and defects, and disclaiming any representations and express and implied warranties, specifically including implied warranties of merchantability or fitness for a particular use. This waived any claims for breach of warranty, fraud, and misrepresentation based on Defendants' conduct or statements that occurred prior to the closing. *Ace, Inc. v. Maynard*, 108 N.C. App. 241 (1992); *Jackson v. Tim Maguire, Inc.*, 2013 N.C. App. LEXIS 360, at *8-12 (N.C. Ct. App. 2013) (unpublished); *Chleborowicz v. Johnson*, 2003 N.C. App. LEXIS 1684, at *7-11 (2003). Accordingly, as discussed below, Plaintiff's claims for alleged misrepresentations that occurred prior to the time of closing fail as a matter of law and must be dismissed.

29. The Court of Appeals decision in *Ace, Inc. v. Maynard*, *supra*, which involved facts similar to the facts in this case, is instructive. In *Ace,* the plaintiff, who lived in North Carolina, negotiated the purchase of a used aircraft with the defendant, who lived in Texas. *Id.* at 242-43. During the negotiations, the defendant made a number of representations regarding the excellent condition of the airplane. *Id.* at 243. Thereafter, the plaintiff traveled to Texas to pick up the plane whereupon he was immediately "disappointed" with the plane's cosmetic features. *Id.* Plaintiff nevertheless proceeded with the purchase. Before leaving to fly the airplane back to North Carolina, the plaintiff signed a one-page "Purchase Agreement" which provided that the plane was being sold "AS IS and WHERE IS" without any representations or warranties. *Id.* at 243-44. Nevertheless, before the

plaintiff departed, the defendant promised to correct certain defects with the airplane. During the flight back to North Carolina the plaintiff experienced additional mechanical problems, which the plaintiff reported to the defendant and the defendant promised to resolve. *Id.* at 244. The defendant later, however, refused to repair the airplane, and the plaintiff sued the defendant for breaches of express and implied warranties, fraud, and unfair and deceptive trade practices. *Id.* at 244-45. At trial, the jury returned a verdict for the plaintiff on the claims for breaches of implied and express warranties and fraud, but the trial court granted the defendant's motion for judgment notwithstanding the verdict on those claims. *Id.* The North Carolina Court of Appeals affirmed the trial court's decision, holding that (1) the defendants' oral representations regarding the condition of the airplane were not competent to prove a breach of express warranties where the plaintiff signed a disclaimer of all warranties, (2) the plain language of the disclaimer excluded any implied warranty of merchantability, and (3) since the disclaimer stated that the defendant made "no representations," the defendant could not have made false representations that would support a fraud claim. Plaintiff's claims in this action are subject to the same reasoning.

*Revocation of Acceptance*

30. In its First Claim for Relief, Plaintiff alleges that is entitled to revoke its acceptance of the APA as well as to the return of the purchase price and other damages because the Aircraft, as delivered by Defendants, was non-conforming and could not be used for its intended purpose.[20] Defendants contend that this claim should be dismissed

---

[20] Incredibly, despite the allegations in the Complaint that it took delivery of and accepted the Aircraft **after** it had discovered the discrepancies and after it was aware the Aircraft was not EASA compliant due to the outstanding STCs, Plaintiff alleges that "at the time of delivery, [Plaintiff] did not and could not have discovered these latent conformities." (Compl. ¶ 34).

because the Aircraft now is conforming and the disclaimers to which Plaintiff agreed preclude Plaintiff's claim.

31.     The North Carolina Uniform Commercial Code provides that a buyer can revoke its acceptance of a good if the good's "nonconformity substantially impairs its value." G.S. § 25-2-608(1).[21] A plaintiff must have accepted the nonconforming good "on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured" and revocation must be "within a reasonable time after the buyer discovers or should have discovered" the nonconformity.  G.S. § 25-2-608(1)(a) and (2). Revocation of acceptance is a remedy that is "generally resorted to only after attempts at adjustment have failed . . . ."  G.S. § 25-2-608, cmt. 4.

32.     This case presents a very unique set of facts regarding Plaintiff's claim for revocation.  Plaintiff accepted and took delivery of the Aircraft in September, 2013, with knowledge that it was nonconforming in that the discrepancies had not yet been remedied, and the Aircraft had not obtained EASA certification to be operated in Europe.  Plaintiff presumably did so under the belief that that the conformity would be "seasonably cured." Plaintiff then waited until June, 2014, and after the discrepancies had been remedied to notify Defendants of its desire to revoke because the Aircraft was not yet EASA compliant. When Defendants apparently proved unwilling to acknowledge the revocation and return the purchase payment, Plaintiff waited until January, 2015, two months after Defendants had obtained the EASA compliance, to bring this action attempting to enforce their revocation.  In the meantime, Plaintiff has operated the now-conforming Aircraft for its

_____

[21] The sale of an aircraft is governed by Article 2 of the North Carolina Uniform Commercial Code. *Ace,* 108 N.C. App.

intended purpose since November, 2014.  Under these alleged facts, Plaintiff's claim for revocation of acceptance must fail.

33.    Plaintiff acknowledges that any conforming conditions, including the discrepancies and the EASA non-compliance, have been cured and the Aircraft is being used for its intended purpose.[22] Accordingly, the Court concludes that Defendants' Motion to Dismiss Plaintiff's First Claim for Revocation of Acceptance should be GRANTED.

*Breach of Contract as to the APA and the Rider*

34.    In its Second Claim for Relief, Plaintiff alleges that Defendants breached the APA and Rider by "failing to deliver the Aircraft . . . free from airworthiness issues, EASA-compliant, with all systems fully operational, and free of defects on or before September 30, 2013."[23] Defendants contend that this claim should be dismissed because it is based on alleged obligations that were conditions precedent, and Plaintiff waived its right to enforce those conditions when it closed on the aircraft.

35.    To establish a cause of action for breach of contract, North Carolina law requires a plaintiff prove the "(1) existence of a valid contract and (2) breach of the terms of that contract." *Sanders v. State Pers. Comm'n*, 197 N.C. App. 314, 320 (2009). The APA provided that Plaintiff was obligated to purchase the Aircraft so long as certain "conditions precedent" were met, including that the Aircraft was EASA compliant. If the conditions precedent were not met, Plaintiff could have elected to terminate the APA. When Plaintiff decided to close on the sale of the Aircraft despite the fact that Defendants had not satisfied the conditions precedent, Plaintiff waived those conditions.  *Demeritt*, 204 N.C. App. at 329 ("[A] party may waive a condition precedent by performing on the contract despite knowledge that a condition has not occurred.") (citing *Fletcher v. Jones*, 314 N.C.

---

[22] Am. Compl. ¶ 32.
[23] Am. Compl. ¶ 42.

389 (1985)). Any allegation that the conditions precedent survived closing is inconsistent with the plain language of the APA and ignores the operation of conditions precedent. *Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc.*, 178 N.C. App. 535, 539 (2006); *Cargill, Inc. v. Credit Assoc., Inc.*, 26 N.C. App. 720, 722-23 (1975); *Hawes v. Vandoros*, 2013 NCBC LEXIS 27, \*13 (N.C. Super. Ct. 2013) (citing *Farmers Bank, Pilot Mountain v. Michael T. Brown Distribs., Inc.*, 307 N.C. 342, 350 (1983)).

36. Similarly, to the extent Plaintiff contends that Defendants breached the APA because it had expressly acknowledged that "time [was] of the essence" to Plaintiff,[24] Plaintiff waived Defendants' obligations by closing on the Aircraft and entering into the Rider. *Phoenix Ltd. P'ship of Raleigh v. Simpson*, 201 N.C. App. 493, 501 (2009) ("Time is of the essence" requirement may be waived by statements and actions manifesting an intent to waive). Here, Plaintiff's decision to close on the sale of the Aircraft knowing that discrepancies needed to be corrected and EASA-compliance secured, and to enter into the Rider, which contained no deadlines or time frames for completion of repairs, manifested an intent to waive the "time is of the essence" requirement.

37. The Court therefore concludes that Defendant's Motion to Dismiss as to Plaintiff's Second Claim for Breach of Contract should be GRANTED.

*Breach of Express Warranties*

38. Plaintiff's Third Claim against Defendants is for Breach of Express Warranties made by Defendants "related to the functionality and characteristics of the Aircraft and the ability of the Aircraft to be rendered airworthy within a certain amount of time, and EASA compliant."[25] Plaintiff asserts Defendants failed to comply with their express warranties and Plaintiff suffered damages as a result. Defendants argue that

---

[24] *Id.*
[25] Am. Compl. ¶ 49.

Plaintiff's Claim for breach of express warranties should be dismissed because Plaintiff failed to allege that Jetcraft breached any of the express warranties set forth in the APA and therefore failed to state a claim upon which relief may be granted.

39.     In order to recover for breach of express warranty, a plaintiff must prove there was "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making [its'] decision to purchase, (3) and that this express warranty was breached by the defendant." *Harbour Point Homeowners' Ass'n v. DJF Enters.,* 206 N.C. App. 152, 162 (2010). In this case, § 5.1 of the APA lists Defendant Jetcraft's express warranties.[26] The only substantive express warranty contained in the APA is that Jetcraft shall convey to Plaintiff good and marketable title to the Aircraft at closing and shall defend such title going forward.[27] Plaintiff does not allege that Jetcraft breached this express warranty. Instead, Plaintiff contends that Jetcraft breached the "warranty" that the aircraft would be EASA compliant.[28] As previously discussed, however, EASA compliance was a condition precedent, not a warranty.[29]

40.     In addition, to the extent that Plaintiff alleges that Defendants made representations and warranties outside of those contained in the APA prior to or contemporaneous the closing on September 6, 2013, Plaintiff waived those warranties by signing the disclaimers. *Ace,* 108 N.C. App. 241. Accordingly, the Court concludes that Defendant's Motion to Dismiss as to Plaintiff's Third Claim for Breach of Express Warranties should be GRANTED as to any representations and warranties made by Defendants prior to or contemporaneous the closing on September 6, 2013.

---

[26] Ex. A § 5.1.
[27] Ex. A § 5.1.5.
[28] Pl.'s Resp. Br. Mot. Dismiss at 16.
[29] Ex. A § 3.1.1.

41.     Plaintiff also claims, however, that Defendants made express representations regarding the EASA-compliance of the Aircraft after the closing. Plaintiff alleges "on April 9, 2014, a Jetcraft representative told Wedderburn in email correspondence that the EASA validation process of the STCs had begun and would be completed by the time the modifications were completed" and that in May, 2014, "Jetcraft representatives again represented to Wedderburn that the EASA STCs had been in the works since January of 2014 and they would be received prior to the time of delivery – which now had been postponed by Defendants until May 21, 2014."[30] These statements could have, at least arguably, created additional express warranties after the closing. *Muther-Ballenger v. Griffin Electronic Consultants, Inc.*, 100 N.C. App. 505, 510-12 (1990) (Oral representations made after the plaintiff closed on sale of medical equipment and signed disclaimer of warranties could be basis for breach of warranty claim). Accordingly, the Court concludes that Defendant's Motion to Dismiss as to Plaintiff's Third Claim for Breach of Express Warranties should be DENIED as to any representations and warranties made by Defendants after the closing on September 6, 2013.

*Breach of Implied Warranties*

42.     Plaintiff's Fourth Claim is that Defendants breached the implied warranty of merchantability and the implied warranty of fitness for a particular purpose with regard to the sale of the Aircraft. Defendants argue that this Claim should be dismissed because such warranties were properly excluded by the language of the parties' contracts.

43.     North Carolina explicitly permits the disclaimer of implied warranties, including the implied warranties of merchantability and fitness for a particular purpose, if the disclaimer is in writing and conspicuous. G.S. § 25-2-316(2). Moreover, "all implied

---

[30] Am. Compl. ¶ 26; Pl.'s Resp. Br. Mot. Dismiss at 19.

warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty[.]" G.S. § 25-2-316(3)(a). "Terms such as 'as is' and the like in ordinary commercial usage are understood to mean that the buyer takes the entire risk as to the quality of the goods involved." *Ace*, 108 N.C. App at 249 (internal quotations and citation omitted).

44.     In the instant case, the APA, Aircraft Delivery Receipt, and Warranty Bill of Sale contain more than that necessary to properly exclude the implied warranties of merchantability and fitness for particular purpose: the mention of "merchantability" and "fitness for particular purpose" in conspicuous language, and the provision that the sale of the aircraft was "as is, where is."[31] *Ace*, 108 N.C. App. at 249. Therefore, the Court finds that Defendants properly disclaimed the implied warranties of merchantability and fitness for a particular purpose, and accordingly, Defendant's Motion to Dismiss Plaintiff's Fourth Claim for Breach of Implied Warranties is GRANTED as to this Claim.

*Fraudulent Inducement to Contract and Fraud*

45.     Plaintiff's Fifth and Sixth Claims are based upon allegations that both prior to and after execution of the APA and Rider Defendants made "knowingly false" statements of material fact or concealed facts from Plaintiff with and "intent to deceive." Plaintiff alleges that Defendants did so for the purpose of inducing Plaintiff to enter into the APA and Rider, that Plaintiff reasonably relied on the misrepresentations in entering into those agreements and "taking delivery of the aircraft," and Plaintiff suffered damages as a result.[32]

---

[31] Exs A, C, & D.
[32] Am. Compl. ¶¶ 59-77.

46.     Plaintiff alleges that "prior to signing the APA, Jetcraft represented to Wedderburn that the Aircraft would be EASA compliant."[33]  Plaintiff alleged that it entered into the Rider because Antonenko represented that Plaintiff "would get what they bargained for in the APA by the time the Aircraft was delivered back to service."[34]  After Defendant made the representations, Plaintiff signed the Delivery Receipt and took delivery of the Aircraft.[35]  These representations, made prior to Plaintiff's execution of the disclaimer contained in the Delivery Receipt in which Plaintiff expressly acknowledged and agreed that Defendants had "not made … any representation", cannot support claims for fraud or negligent misrepresentation.  Jackson, 2013 N.C. App. LEXIS 360, at *8-12; *Chleborowicz v. Johnson*, 2003 N.C. App. LEXIS 1684 *7-11(2003).

47.     With regard to alleged false statements made after execution of the agreements, these statements could not have induced Plaintiff to enter into the APA or Rider since they occurred long after those agreements were executed.  To the extent Plaintiff alleges that the statements induced it to "take delivery of the Aircraft," those allegations cannot be the basis of fraud or misrepresentation claims since Plaintiff explicitly acknowledged delivery and acceptance of the aircraft on September 6, 2013.[36]

48.      The Court concludes that Defendants' Motion to Dismiss as to Plaintiff's Fifth Claim for Fraudulent Inducement to Contract and Sixth Claim for Fraud should be GRANTED.

*Negligent Misrepresentation.*

---

[33] Am. Compl. ¶ 13; Pl.'s Resp. Br. Mot. Dismiss at 19; At the hearing and in its brief Plaintiff also alleges that it was induced to enter into the Rider on September 5, 2013, because Antonenko represented to Plaintiff that Jetcraft had already started the process of seeking EASA compliance. That allegation, however, does not appear in the Amended Complaint.
[34] Am. Compl. ¶21.
[35] *Id.* ¶ 23.
[36] *Id.* 23; Defs.' Br. Supp. Mot. Dismiss Ex. C.

49.     Plaintiff's Eighth Claim for Relief alleges that Defendants made false representations and "misstatements of then-existing fact," and "failed to exercise reasonable care or competence in obtaining communicating truthful and accurate information to Plaintiff."[37] Plaintiff further alleges that it reasonably relied on the representations and as a result suffered injury.[38]

50.     In North Carolina, negligent misrepresentation "occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988), *rev'd on other grounds*, 329 N.C. 646 (1991).  "The duty required to make the claim may either come from statute, contract, or 'may be implied from attendant circumstances.'" *USA Trouser, S.A. de C.V. v. Int'l Legwear Group, Inc.*, 2014 U.S. Dist. LEXIS 39271 *25 (W.D.N.C. Mar. 24, 2014) (quoting *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 59 (2001)).  A breach of the duty owed occurs when "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions . . . ." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 218 (1999).

51.     With regard to alleged misrepresentations made by Defendants prior to or contemporaneous the closing on September 6, 2013, Plaintiff's claim must be dismissed because it expressly acknowledged and agreed that Defendants had "not made . . . any representation" in the disclaimer.[39] Accordingly, Defendants could not have made a negligent representation. *Ace*, 108 N.C. App. at 250.  The Court concludes that the Motion

---

[37] Am. Compl. ¶¶ 85-86.
[38] *Id.* ¶¶ 87-88.
[39] Defs.' Br. Supp. Mot. Dismiss Ex. C.

to Dismiss as to Plaintiff's Eighth Claim for Negligent Misrepresentation for alleged representations made by Defendants prior to or contemporaneous the closing on September 6, 2013, should be GRANTED.

52.     With regard to the statements and representations made after the closing, Plaintiff has alleged that Defendants represented that the process of obtaining EASA certification had been started in January 2014 and that the Aircraft would be EASA compliant by no later than May 21, 2014, but the Aircraft was not EASA compliant until November 2014.  Plaintiffs also allege that, in reliance on these representations, it booked charter flights in Europe for the period between May and November 2014, and incurred significant damages in making alternative arrangements because it did not have a compliant aircraft.[40]  The Court concludes that these allegations, taken as true, could support a claim for negligent misrepresentation.[41]  Accordingly, the Motion to Dismiss as to Plaintiff's Eighth Claim for Negligent Misrepresentation for alleged representations made by Defendants after the closing on September 6, 2013 should be DENIED.

*Unfair or Deceptive Trade Practices*

53.     Plaintiff's Seventh Claim for Relief alleges that Defendants committed unfair or deceptive acts in violation of N.C.G.S. §75-1.1 (the "UDTPA"). The "Claim for Relief" does not contain any factual allegations in support of the claim, but merely recites the elements of such a cause of action.[42]  Plaintiff's claim could be dismissed on this ground alone.

---

[40] Am. Compl. ¶¶ 28 and 32.
[41] The Court recognizes that there are decisions from North Carolina courts holding that an arms-length transaction between businesses cannot give rise to a duty of care that would support a negligent misrepresentation claim. *USA Trouser, S.A. de C.V. v. Int'l Legwear Group, Inc.,* 2014 U.S. Dist. LEXIS 39271, at *25 (W.D.N.C. Mar. 25, 2014).  Nevertheless, there also is language in North Carolina appellate decisions that suggests that the necessary duty of care "may be implied from attendant circumstances," *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 59 (2001), "or in any other transaction in which [a party] has a pecuniary interest," *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 218 (1999).  The Court concludes that the law on this issue is not clear, and accordingly dismissal is not appropriate at this stage.
[42] Am. Compl. ¶¶ 78-83.

Nevertheless, in its brief Plaintiff contends that "because [it] has pled sufficient facts to satisfy its fraud claims, it has also sufficiently pled its UDTPA claim."[43] *See, e.g. Webb v. Triad Appraisal & Adjustment Serv., Inc.*, 84 N.C. App. 446, 449 (1987) ("Proof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive trade practices.").

54.     Defendants argue that this Claim should be dismissed because it is entirely premised on Plaintiff's other claims. Defendant contends that if the underlying claim upon which a UDTPA claim is based fails, the UDTPA claim fails as well. E.g., *James v. Vanderbilt Mortg. & Fin., Inc.*, 2012 U.S. Dist. LEXIS 16577, *13 (W.D.N.C. 2012) ("Having failed to establish any underlying claims against Defendant, Plaintiffs' claims for unfair and deceptive trade practices and for declaratory relief must also fail.").

55.     The Court has, of course, dismissed Plaintiff's claims for breach of contract and fraud, two claims that frequently underlie a claim under G.S. §75-1.1.  The Court is not persuaded, however, that the viability of a claim for unfair or deceptive practices is dependent on successfully stating another tort or contract claim.  In fact, the Supreme Court has held that a claim for unfair or deceptive trade practices is not dependent on proof of fraud.  *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 470-71 (1986).  Rather, the Supreme Court has suggested that a claim under G.S. § 75-1.1 is a separate and independent statutory cause of action that was specifically intended to provide a means other than an action in tort, contract or for breach of warranty for redressing certain types of business practices.  *Marshall v. Miller*, 302 N.C. 539, 543-44 (1981).  Accordingly, the fact that a plaintiff may not have other viable tort or contract claims does not necessarily mean that it cannot allege a claim under G.S. § 75-1.1.

---

[43] Pl.'s Resp. Br. Mot. Dismiss at 25.

56. In any event, the Court has not dismissed certain of Plaintiff's claims based on representations made after the closing. In addition, at this stage, the allegations regarding Defendants' post-closing representations, Plaintiff's reliance on the representations, and resulting injury are sufficient to survive a Rule 12(b)(6) challenge to the claim for unfair or deceptive acts. The Court finds that Defendants' Motion to Dismiss Plaintiff's Seventh Claim for unfair and deceptive trade practices should be DENIED.

*Rescission*

57. Plaintiff's Ninth Claim is for Rescission, as an Alternate Remedy, and specifically "seeks to void the APA thereby requiring (1) Wedderburn to return the Aircraft to Defendants and (2) Defendants to return to Wedderburn the consideration paid by Wedderburn (with interest) such that the parties can be returned to their earlier positions as if no agreements had never existed."[44] Defendants move for dismissal of this Claim on the grounds that it cannot be brought as an independent cause of action, and Plaintiff acknowledges this fact.[45]

58. In North Carolina, "the common law doctrine of rescission is equivalent to 'revocation of acceptance.'" *Prichard Enters., Inc. v. Adkins*, 858 F. Supp. 2d 576, 590 (E.D.N.C. 2012) (quoting *Riley v. Ken Wilson Ford, Inc.*, 109 N.C. App. 163, 173 (1993) ("Rescission of a contract is not addressed in the Uniform Commercial Code, but has been treated as revocation of acceptance in the context of a sale of goods.")).

59. The Court has dismissed Plaintiff's claim for revocation of acceptance, and it likewise concludes that Defendants' Motion to Dismiss Plaintiff's Ninth Claim for

---

[44] Am. Compl. ¶ 92.
[45] Pl.'s Resp. Br. Mot. Dismiss at 13, n. 7.

Rescission should be GRANTED.

*Exemplary Damages*

60.     Defendants argue that Plaintiff's Tenth Claim for Exemplary Damages should be dismissed because it is not a cognizable claim for relief.  North Carolina does not recognize a "cause of action" for punitive damages. *Landmar, LLC v. Wells Fargo Bank, N.A.*, 978 F. Supp. 2d 552, 571 (W.D.N.C. 2013). "Punitive damages are available, not as an individual cause of action, but as incidental damages to a cause of action." *Collier v. Bryant*, 216 N.C. App. 419, 434 (2011) (citing *Hawkins v. Hawkins*, 101 N.C. App. 529, 532 (1991). Therefore, the Court concludes that Defendants' Motion to Dismiss Plaintiff's Tenth Claim for Exemplary Damages is GRANTED as to this Claim without prejudice to Plaintiff's right to pursue such damages if it is so entitled.

THEREFORE, IT IS ORDERED, based upon the foregoing FINDINGS and CONCLUSIONS that:

61.     Defendants' Motion to Dismiss is GRANTED as to Plaintiff's First, Second, Fourth, Fifth, Sixth, Ninth Claims for Relief for revocation of acceptance, breach of contract, breach of implied warranties, fraudulent inducement to contract, fraud, and rescission.

62.     Defendants' Motion to Dismiss is GRANTED as to Plaintiff's Tenth Claim for Relief for Exemplary Damages without prejudice to Plaintiff's right to pursue such damages if it is so entitled.

63.     Defendants' Motion to Dismiss is GRANTED in part as to Plaintiff's Third Claim of Relief for Breach of Express Warranties, to the extent that it is based on any representations and warranties made by Defendants prior to or cotemporaneous the closing of September 6, 2013. To the extent that the Claim for Breach of Express Warranties is based on any representations and warranties made by Defendants after the closing on

September 6, 2013, Defendants' Motion to Dismiss is DENIED as to this Claim.

64.     Defendants' Motion to Dismiss is GRANTED in part as to Plaintiff's Eighth Claim of Relief for Negligent Misrepresentation, to the extent that it is based on representations made by Defendants prior to or contemporaneous the closing on September 6, 2013. To the extent that the Claim for Negligent Misrepresentation is based on representations made by Defendants after the closing on September 6, 2013, Defendants' Motion to Dismiss is DENIED as to this Claim.

65.     Defendants' Motion to Dismiss is DENIED as to Plaintiff's Seventh Claim for Unfair and Deceptive Trade Practices.

SO ORDERED, this the 6th day of November, 2015.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases